[Crim. No. 491. Department One.—May 23, 1899.]

## THE PEOPLE, Respondent, v. CHARLES L. WESTLAKE, Appellant.

CRIMINAL LAW—EMBEZZLEMENT BY TAX COLLECTOR—FRAUDULENT APPRO-PRIATION—ERRONEOUS INSTRUCTION.—Under an indictment for embezzlement against a tax collector, framed under section 503 of the Penal Code, charging the defendant with having fraudulently and feloniously appropriated public moneys to his own use, and not in the due execution of his trust, an instruction purporting to be based upon section 424 of the Penal Code, and stating that if the defendant willfully omitted to pay over any public money received by him, he is guilty as charged, is inapplicable and essentially erroneous.

ID.—WILLFUL OMISSION TO PAY OVER MONEY.—The willful omission of a public officer to pay over public money received by him, is not necessarily embezzlement under section 424 of the Penal Code. The money might be retained for commissions, or under other *bona fide* claim of right. To sustain a conviction under that section, it must be alleged and shown that the defendant was authorized by law to receive the money, and that it was the duty of the defendant under the law to pay it over to the treasurer, as well as that he willfully omitted to do so.

ID.—CONSTRUCTION OF CHARGE—INCORRECT INSTRUCTION.—The rule that a single instruction which does not contain all the conditions and limitations which it should contain, is to be construed with all the other instructions given in the charge to the jury, and that if, taken together as a whole, the charge correctly states the law, no reversible error is committed, does not apply where an instruction plainly states an incorrect principle of law. Such an instruction is not cured by a correct instruction in some other part of the charge.

ID.—EVIDENCE—INSPECTION OF LICENSE BOOK BY SUCCESSOR—INSUFFI-CIENT SHOWING.—The evidence of the successor in office of the defendant, that at the time of his final settlement there were found more stubs in the retail liquor license book than he had received licenses for is inadmissible, where the date of the settlement was not given, and there was no showing that the book had been in the possession of the defendant, or as to where it had been kept, or that it was in the same condition in which it was when the defendant left the office.

ID.—TESTIMONY OF DEPUTY—ISSUANCE OF LICENSES—CROSS-EXAMINATION. One who had served both as deputy auditor and deputy tax collector during the defendant's term of office, and who had testified as to the fact of such service, and as to the issuance of licenses as deputy auditor to the defendant as tax collector, may be asked on cross-examination, as to the extent of the duties

performed by the witness as deputy tax collector, and who attended therein to the collection of moneys, and who had the combination of the safe, and how often the cash was settled and balanced, and other questions of the same general character; and it is error to exclude such questions.

ID.—LIBERALITY OF CROSS-EXAMINATION—GENERAL SCOPE OF DIRECT EXAMINATION.—Great liberality should be allowed in the cross-examination of a witness, for the purpose of testing his accuracy or credibility; and where questions asked appear to relate to facts and circumstances within the general scope of the direct examination, it is error to exclude them.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. N. A. Dorn, Judge.

The facts are stated in the opinion.

C. F. Lacy, and G. A. Daugherty, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

COOPER, C.—The defendant was indicted by the grand jury of Monterey county for the crime of embezzlement, charged to have been committed by him while tax collector of said county. The charging part of the indictment is, "Did then and there, to wit, on said seventh day of July, 1897, and in the county of Monterey, fraudulently and feloniously, and not in the due and lawful execution of his trust, employment, and duty as aforesaid, convert, appropriate, and embezzle the said public moneys to his own use, contrary to the form," et cetera. The amount of money alleged to have been so embezzled was three hundred and seventy-one dollars, received between the first day of June and the seventh day of July, 1897.

Defendant was found guilty as charged, and sentenced to a term of ten years in the state prison. He made a motion for a new trial, which was denied, and this appeal is from the judgment and order denying his motion. The Penal Code, section 503, defines embezzlement as follows: "Embezzlement is the fraudulent appropriation of propery by a person to whom it has been intrusted." Section 504 is as follows: "Every officer of this state, or of any county, city, city and county, or other municipal

corporation or subdivision thereof, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose, not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

The indictment was drawn under section 504. The court in its instructions to the jury said: "The defendant is charged with the crime of embezzlement. Section 424 of the Penal Code, under which this prosecution is made, reads as follows," and then proceeded to read all of section 424. Section 424 contains ten subdivisions in regard to the definition of crime by a public officer, and the portions of the section necessary to be discussed herein are as follows: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys who either: 1. Without authority of law appropriates the same, or any portion thereof, to his own use or to the use of another; or . . . . 10. Willfully omits or refuse to pay over to any officer or person authorized by law to receive the same any money received by him under any duty imposed by law so to pay over the same, is punishable by imprisonment in the state prison for not less than one nor more than ten years, and is disqualified from holding any office in this state." The court further, in its charge to the jury, told them that if, after receiving public money, the defendant "willfully omitted to pay over the same to the county treasurer such money, or any part of it, no matter whether it be the sum named in the indictment or some smaller sum, he is guilty as charged." The court, by reading section 424 to the jury, and by telling them that defendant was being prosecuted under said section, and that if he willfully omitted to pay over money to the county treasurer, he was guilty as charged, evidently defined embezzlement by a public officer to consist in willfully refusing to pay over public money to the county treasurer after receiving it. We think the instruction and the views given to the jury by the court below erroneous. The defendant no doubt could have been prosecuted under sec-

tion 424, but he was charged under section 504. If the instruction given by the court stated the law correctly, then the willful omission of a public officer of a county to pay over to the county treasurer money which has been received by him in his official capacity is embezzlement. The money might be claimed by the officer as due him for commissions or under other *bona fide* claim, and yet under the instructions of the court if he willfully refused to pay over the money he would be guilty of embezzlement. The omission to pay over money by a public officer is not necessarily embezzlement. In *People v. Carrillo*, 54 Cal. 63, the defendant was charged with fraudulently and without authority of law and willfully and feloniously appropriating money to his own use which had come into his possession as tax collector. The court below instructed the jury that if they found the facts to be that defendant received the money and failed to pay over the same as required by law, this, if unexplained, raised a presumption of felonious appropriation which would authorize a verdict of guilty. This court held the instruction erroneous and reversed the case, using this language: "The instruction is clearly erroneous, in that the jury are told that the failure of the prisoner to pay over the money, if unexplained, raises a presumption of a felonious appropriation which will authorize a verdict of guilty. The alleged felonious appropriation was the ultimate fact to the solution of which the deliberations of the jury were to be addressed. It was the ultimate and important fact to be found by their verdict before judgment of conviction could properly go against the prisoner. To tell them, therefore, that if they should find some other and merely probative fact, then the principal fact of guilty appropriation was to be reached by mere presumption, was an unwarrantable interference with the functions of the jury." In the case just quoted, the judge of the lower court told the jury that the failure to pay over the money raised a presumption of felonious appropriation. In the case at bar, the judge told the jury that the willful omission to pay over the money, of itself made the defendant guilty as charged. If the judge in this case had told the jury that the willful omission to pay over the money by defendant was sufficient to raise a presumption of his guilt, it would clearly have been error under the ruling in the case of *People v. Carrillo, supra*. To tell them that

the willful omission to pay over the money was conclusive of his guilt is certainly more injurious to defendant and more clearly erroneous. In the Carrillo case, the presumption was open to explanation, and the judge so told the jury. In the case at bar, under the instruction of the court, there was no room for explanation, and if the jury found that the defendant willfully omitted to pay over the money, they either had to find the defendant guilty or disobey a plain mandate of the court.

Defendant could have been indicted under subdivision 10 of section 424 of the Penal Code, and in such case the indictment would have to state that defendant received public moneys and refused or omitted to pay the same to an officer authorized by law to receive it under a duty imposed by law upon him to pay over the same. The indictment in this case contains no allegation as to anyone being authorized by law to receive the money and no allegation as to any duty imposed by law upon defendant to pay over the same. If the willful omission to pay over money to the county treasurer is a crime under subdivision 10 of section 424, the indictment certainly should have stated that the county treasurer was the person authorized by law to receive the money, and that it was the duty of defendant under the law to pay it to the treasurer. The defendant might not have known to whom the money should have been paid. But here we have the defendant charged with embezzlement in fraudulently appropriating money to his own use, and the law given to the jury that if he willfully refused to pay the money to the county treasurer "he is guilty as charged." The instruction is the equivalent of saying to the jury: "If the defendant has willfully omitted to pay the money to the county treasurer, I charge you as a matter of law that he is guilty of having fraudulently and feloniously appropriated it to his own use as charged in the indictment."

The statement of the proposition carries with it its own refutation. In *People v. Hamilton*, 103 Cal. 489, the defendant was informed against by the district attorney, under section 424 of the Penal Code, for the crime of omitting and refusing to pay over public moneys received by him in his official capacity to his successor. The court in its opinion said: "The gravamen of the charge in the information is, that it was the duty of the defend-

ant imposed by law to transfer the money in question to his successor in office; that he willfully, fraudulently, and feloniously neglected and refused to pay the same to his successor," et cetera, and then, after discussing the case further, used this language: "Defendant could not, under the information, be convicted for a failure to pay these moneys to the county treasurer for the reasons: 1. He was not charged in the information with any neglect or refusal so to do." In this case, defendant is not charged with any such neglect, refusal, or omission, and yet the jury are told that such omission would make defendant guilty as charged. It is claimed that if the instruction given was error, that the court gave the law correctly in other parts of its instructions. It is the rule that when a single instruction, standing alone, does not contain all the conditions and limitations which it should, and is thus subject to legal criticism, that the giving of it will not be error if it can be read in connection with other instructions, and thus make all the instructions harmonize as a whole, and if, being read together, supplemented by each other, they all together fairly and correctly state the law; but this rule does not apply when the instruction contains a plain statement of an incorrect principle of law. An instruction plainly erroneous is not cured by a correct instruction in some other part of the charge. (*People v. Wong Ah Ngow*, 54 Cal. 151; *People v. Bush*, 65 Cal. 129; *People v. Marshall*, 112 Cal. 422.)

One Elmer Alexander, who had succeeded the defendant as tax collector of the county August 2, 1897, was called as a witness by the prosecution, and stated that at his first settlement as tax collector his attention was called to the condition of the retail liquor license book from which he had procured his retail liquor license. It will be noted that the witness does not fix the date of making his first settlement. The witness was then asked by the prosecution the following question: "Q. What did you discover about that book unusual?" To this question the defendant objected, upon the ground that the question related to a time subsequent to the time the defendant left the office, that there was no proof that the book was in the same condition it was in when defendant left the office, and upon the ground that the book itself is the best evidence. The court overruled the objection and the witness answered: "There was more stubs than

I had received licenses for." We think the objection to this question should have been sustained, and that the answer may have materially injured the defendant before the jury. It is not at all clear what the answer meant, but it is susceptible of such interpretation as would cause the jury to believe that defendant had taken out licenses from the book without accounting for them. It does not appear that the book was ever in the possession of defendant, nor where it had been kept, nor that it was in the same condition as it was in when Alexander first received it. The book might have been in the hands of a dozen different persons after August 2, 1897, and before the witness made his first settlement as tax collector. Where the liberty and rights of a defendant are being tried, the ends of justice are better subserved by rejecting all incompetent or doubtful testimony.

Mrs. Baker, a witness for the prosecution, testified that she was employed in the auditor's office during 1897 while the defendant was tax collector, and that she was familiar with the method of issuing licenses to the tax collector. That between the first day of January and the second day of August, 1897, she issued to defendant various licenses, amounting in the aggregate to two hundred and ninety-four dollars. That she was also employed in the tax collector's office (being the office held by defendant) during the whole of his incumbency. The witness identified a large number of licenses as being issued by defendant, and testified that they were in defendant's handwriting. She further testified in her direct examination that when she issued licenses from the defendant's office she put the money in the safe as a rule, but sometimes in the cash drawer. That the tax money was put in the cash drawer. That in the month of May, 1897, she issued licenses from the auditor's office to the tax collector. The witness, after examining a stub-book, said that she believed that all the licenses issued were from the book of new style licenses. The witness, on cross-examination, testified that she was deputy auditor and deputy tax collector at the same time, and that she went to work in defendant's office about March 1, 1897, and continued there until August 2, 1897. The following questions were asked of the witness by the defendant in cross-examination: "1. Q. What was the extent of your duties there? 2. Q. What did you do in your capacity as deputy tax

collector?  3. Q. During this period of time, from the 1st of
March until the 2d of August, 1897, who, in the tax collector's
office attended to the business of collecting money orders, post-
office orders, and such as that?  4. Q. Who besides yourself had
the combination of the safe?  5. Q. Did you have the combina-
tion of the safe?  6. Q. While you were in charge of the tax
collector's office, or employed there as deputy, from the first of
March until the second of August, how often was the cash set-
tled and balanced?"  There were several other questions asked
of the same general character, but the above will be sufficient for
the purposes of this decision.  To each of these questions the
prosecution objected upon the ground that it was not proper
cross-examination, and the objection was sustained, and to each
ruling the defendant excepted.

We think the court below confined the cross-examination
within too narrow limits.  The witness was testifying against
the defendant who was being tried for embezzling public moneys.
She had been a deputy in the office, and in charge of many im-
portant details in connection with it.  It was for the jury to
determine whether the defendant was himself the party who had
fraudulently appropriated public money.  The power of cross-
examination is one of the most efficacious tests which is known to
the law for the discovery of truth.  To deprive the defendant of
this right in a proper case, and in regard to material matter,
and when the cross-examination is confined within the general
scope of the direct examination, is error for which a judgment
of conviction should be reversed.  It is always proper to cross-
examine a witness fully as to all facts and circumstances con-
nected with the matters stated in his direct examination.  (1
Greenleaf on Evidence, sec. 445.)

This rule in substance has been adopted by this court in many
cases.  In *People v. Gallagher*, 100 Cal. 476, the court said: "The
right of cross-examination affords the most effective mode of
testing the accuracy or credibility of a witness, and should not
be restricted beyond the requirements of the statute."  In *Santa
Ana v. Harlin*, 99 Cal. 545, the court said: "Great liberality
is properly extended in such cross-examinations, and for the pur-
pose of testing the knowledge, judgment, or bias of the witness
the liberality is wisely exercised."  Applying the above rules,

the questions asked appear to us to have been within the general scope and pertaining to the direct examination.

We advise that the judgment and order be reversed.

Britt, C., Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Garoutte, J., Harrison, J., Van Dyke, J.