## STATE v. LAKE.

No. 3544.   Decided March 14, 1921.   (196 Pac. 1015.)

1.  HOMICIDE—IN MANSLAUGHTER CASE EVIDENCE HELD TO PRESENT A JURY QUESTION AS TO EXCESSIVE SPEED OF DEFENDANT'S AUTOMOBILE. In a prosecution for involuntary manslaughter, the question whether or not defendant's automobile was running at a dangerous or excessive rate of speed at the time it struck and killed deceased *held* exclusively a jury question.[1]

2.  HOMICIDE—WHETHER DEFENDANT KEPT A PROPER LOOKOUT AND OBSERVED THE COURSE OF HIS AUTOMOBILE HELD A JURY QUESTION. In a prosecution for involuntary manslaughter, whether defendant kept a proper lookout and observed the course his automobile was taking so as to avoid a collision at a point

---

[1] *State* v. *Gordon*, 28 Utah, 15, 76 Pac. 882; *State* v. *Gesas*, 49 Utah, 181, 162 Pac. 366; *State* v. *Hutchings*, 30 Utah, 319, 84 Pac. 893; *Cobb* v. *Hartenstein*, 47 Utah, 174, 152 Pac. 424; *Pennington* v. *Redman*, 34 Utah, 223, 97 Pac. 118; *State* v. *Hill*, 44 Utah, 79, 138 Pac. 1149; *Johnson* v. *Union Pacific*, 35 Utah, 285, 100 Pac. 390; *Foulger* v. *McGrath*, 34 Utah, 86, 95 Pac. 1004.

where there were no sidewalks and pedestrians might be expected to travel on the paved street as deceased did *held* a jury question.[2]

3. HOMICIDE—EVIDENCE HELD TO SHOW THAT DEFENDANT DID NOT KEEP A PROPER LOOKOUT AND OBSERVE COURSE OF HIS AUTOMOBILE. In a prosecution for involuntary manslaughter, evidence *held* to sustain the jury's determination that the defendant, who claimed unavoidable accident, did not keep a proper lookout and observe the course of his automobile so as to have avoided a collision with the deceased.

4. HOMICIDE—WHETHER DEFENDANT HAD CONTROL OF AUTOMOBILE WHEN IT STRUCK DECEASED NOT IMPORTANT WHERE JURY CONCLUDED HE OUGHT TO HAVE AVOIDED ACCIDENT. In a prosecution for involuntary manslaughter, the question whether the evidence showed defendant had his automobile under safe, proper, and immediate control at the time it struck and killed the deceased is of little or no consequence where, if he did have it under complete control as contended, the jury in all probability concluded that he ought to have avoided the accident.[3]

5. HOMICIDE—DENYING MOTION FOR DIRECTED VERDICT FOR THE DEFENDANT HELD NOT ERROR IN VIEW OF EVIDENCE. In a prosecution for involuntary manslaughter for the killing of deceased by defendant's automobile, evidence *held* such that the trial court did not err in denying defendant's motion for directed verdict.[4]

6. HOMICIDE—INDICTMENT AND INFORMATION—WHERE DECEASED WAS KILLED BY DEFENDANT'S AUTOMOBILE, EVIDENCE AS TO FAILURE TO SOUND WARNING ADMISSIBLE UNDER INFORMATION; DEFENDANT DESIRING MORE SPECIFIC CHARGE SHOULD DEMUR. In a prosecution for involuntary manslaughter, where deceased was killed by collision with defendant's automobile, and the information alleged that defendant "without due caution and circumspection negligently, recklessly, wantonly, willfully, and unlawfully" did the things complained of, testimony of state's

[2] *Barker* v. *Savas*, 52 Utah, 262, 172 Pac. 672; *State* v. *Gordon*, 28 Utah, 15, 76 Pac. 882.

[3] *State* v. *Hayes*, 14 Utah, 118, 46 Pac. 752.

[4] *State* v. *Hayes*, 14 Utah, 118, 46 Pac. 752; *State* v. *Benson*, 46 Utah, 74, 148 Pac. 445; *State* v. *Allen*, 189 Pac. 84; *State* v. *Endsley*, 19 Utah, 478, 57 Pac. 430; *State* v. *Gordon*, 28 Utah, 15, 76 Pac. 882; *State* v. *Hutchings*, 30 Utah, 319, 84 Pac. 893; *State* v. *Brown*, 33 Utah, 109, 93 Pac. 52; Id., 36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545.

witness as to not hearing any warning just prior to the collision was admissible, and if the defendant desired a more specific charge as to the words "without due caution and circumspection," he should have raised the question by demurrer specifying the particular grounds of objection. Comp. Laws 1917, § 8890.[5]

7. HOMICIDE—EVIDENCE OF DEFENDANT'S FAILURE TO WARN DECEASED OF AUTOMOBILE'S APPROACH, IF ERRONEOUSLY ADMITTED, HELD HARMLESS. In a prosecution for involuntary manslaughter, if state's testimony as to defendant giving no warning to the deceased of the approach of his automobile was erroneously admitted in view of the information, it was harmless, where, if the defendant was guilty at all, he was guilty irrespective of whether or not warning was given. Comp. Laws 1917, § 9231.

8. HOMICIDE—IN PROSECUTION FOR INVOLUNTARY MANSLAUGHTER, EVIDENCE HELD NOT PREJUDICIAL. In a prosecution for involuntary manslaughter, where deceased was killed by defendant's automobile, testimony as to witnesses having remarked about a wagon passing just before the accident, which had returned to the place of collision at the defendant's request, if incompetent, *held* not prejudicial.[6]

9. CRIMINAL LAW—WITNESSES—QUESTIONS CALLING FOR CONCLUSION OF WITNESSES PROPERLY REJECTED—REPETITION OF QUESTIONS ON REDIRECT EXAMINATION HELD IMPROPER. In a prosecution for involuntary manslaughter, where deceased was killed by defendant's automobile, where a witness who drove a wagon along the road testified on direct and cross examination that he had no recollection of seeing an automobile at the point of the accident and that no accident happened while he was there, a question on redirect as to whether he saw an automobile being driven at a reckless rate of speed at such place and time was properly excluded in view of his previous answers and as calling for a bald conclusion of the witness.

10. HOMICIDE—INFORMATION FOR INVOLUNTARY MANSLAUGHTER HELD SUFFICIENT. Under Comp. Laws 1917, § 8027, subd. 2, invol-

---

[5] *State* v. *Gesas*, 49 Utah, 181, 162 Pac. 366; *Martindale* v. *O. S. L. R. Co*, 48 Utah, 464, 160 Pac. 275; *Ohlenkamp* v. *U. P. Rd. Co.*, 24 Utah, 232, 67 Pac. 411; *Edd* v. *U. P. Coal Co.*, 25 Utah, 293, 71 Pac. 215; *Peavy* v. *Salt Lake City*, 11 Utah, 331, 40 Pac. 206.

[6] *Lumm* v. *Howells*, 27 Utah, 80, 74 Pac. 432; *Marks* v. *Sullivan*, 9 Utah, 12, 33 Pac. 224; *Rutan* v. *Huck*, 30 Utah, 217, 83 Pac. 833; *State* v. *Blake*, 36 Utah, 605, 105 Pac. 910.

untary manslaughter is committed when the homicide occurs "in the commission of an unlawful act not amounting to a felony or in the commission of a lawful act which might produce death in an unlawful manner or without due caution or circumspection," and an information for manslaughter alleging that defendant negligently, recklessly, wantonly, wilfully, and unlawfully, and without due caution or circumspection, so drove his automobile as to result in the collision with and the death of deceased, is sufficient.[7]

Appeal from District Court, Third District, Salt Lake County; *John F. Tobin,* Judge.

R. R. Lake was convicted of involutary manslaughter, and he appeals.

AFFIRMED.

*Powers, Riter & Cowan,* of Salt Lake City, for appellant.

*Harvey Cluff,* Atty. Gen., and *Hal Farr,* Asst. Atty. Gen., for the State.

THURMAN, J.

Appellant was convicted in the district court of Salt Lake county of the crime of involuntary manslaughter and sentenced to imprisonment for a period of one year in the county jail. The homicide was the result of an automobile accident alleged in the information to have been caused by the defendant operating his automobile in a negligent and careless manner. Appellant's counsel in their brief filed in the case state the material elements of the charge as follows:

"The gist of the charge is that the defendant was guilty of the commission of a lawful act which might produce death, without due caution and circumspection. The information charges three specific acts of dereliction on the part of the defendant, in that defendant operated a motor vehicle upon the public highway:

---

[7] *State* v. *Topham,* 41 Utah, 39, 123 Pac. 888; *State* v. *Gesas,* 49 Utah, 181, 162 Pac. 366.

Firstly, without observing the course that said automobile was taking to see if the said course was obstructed or about to be obstructed by any persons or other obstacles, so as to endanger the life and limb of persons being then and there upon said public highway; secondly, that defendant operated said automobile at a high and dangerous rate of speed upon said public highway, to wit, at a rate of speed in excess of 25 miles per hour; and, thirdly, that defendant did not have said automobile under proper, safe and immediate control."

Appellant entered a plea of not guilty. The case was tried to a jury and resulted in a conviction. Judgment was entered accordingly, from which judgment defendant appeals. The errors assigned and relied on will be stated in the course of the opinion.

There is substantial evidence in the record tending to show that on the afternoon of December 1, 1919, the defendant, accompanied by a Mr. Walker and his sister, was driving a Hudson automobile in a southerly direction on State street, in Salt Lake county, between Salt Lake City and the town of Midvale. The defendant and the two persons accompanying him occupied the front seat. It was growing dark, but, according to the testimony of Mr. Walker, a witness for defendant, one could see along State street for a distance of a mile, and defendant himself testified he could see quite a ways ahead. At a point approximately 600 feet south of the intersection of Union avenue and State street, and opposite the home of one Alonzo McCleary, defendant's automobile, running along and upon the west side of the pavement of State street, struck and instantly killed one Le Roy Anderson, a small boy of about nine years of age. The evidence further shows that the boy's father, O. C. Anderson, lived at or near the intersection of State street and what is known as Center street, in the town of Midvale; that he was employed at the United States Smelter, and on the evening in question returned home from his work a little before 5 o'clock; that shortly afterwards he left his home in an automobile to go to the residence of one Peterson, who lived about a half mile distant, near the scene of the accident. It is presumed that the boy attempted to follow his father, which accounts for his being at the place where the accident occurred.

Peterson's residence, according to the evidence, is about 50 or 75 feet from the place where the boy was killed. The father testified that just as he was driving away from Peterson's residence on his return home, and while on Peterson's right of way, and before entering State street, he saw the boy coming north on the extreme westerly side of State street about 50 feet away; that the boy saw him and smiled; that at the same time he saw the boy he saw defendant's automobile running south on the west side of the street at the rate of about 40 miles an hour; that he called to the boy and the boy stopped, threw up his hands, and the car struck him; that he was struck by the right side of the front end of the car; that it knocked him 25 or 30 feet and ran about 200 feet before it stopped. Other witnesses for the state heard the noise caused by the collision, but did not witness the accident. The occupants of defendant's car testified that the car was running 23 or 24 miles an hour; that at the point where the collision occurred they passed a wagon loaded with brush going north on the east side of the pavement, and when defendant's machine was about 6 feet from the rear end of the wagon the boy jumped out from behind the wagon and in 'front of defendant's car.' The testimony of said witnesses was all to the effect that it was impossible to avoid the collision. Witnesses for the state testified that the wagon loaded with brush passed about five minutes before the accident occurred.

The foregoing are the material features of the evidence. Defendant moved for a directed verdict on the alleged grounds that the evidence failed to show that defendant was driving his car at a dangerous or excessive rate of speed, or that he failed to observe the course he was taking so as to avoid a collision, or that he did not have his car under proper, safe, and immediate control. The motion was denied.

Whether or not the defendant's car was running at a dangerous or excessive rate of speed was a question exclusively for the jury under the facts of the instant case. The witness O. C. Anderson, after duly qualifying as to his competency to express an opinion, testified that in his

opinion defendant's car, when it struck the boy, was
running at a speed of 40 miles an hour. Defendant's wit-
nesses testified that the speedometer on the car indicated only
23 or 24 miles an hour. Under these circumstances we are
not prepared to hold as a matter of law that there was no
substantial evidence to support the charge that the speed was
in excess of 25 miles an hour. Besides this, there was also
evidence to the effect that the boy was thrown by the impact
a distance of 25 or 30 feet, and that the car continued on its
course for a distance of 200 feet before it was stopped. These
circumstances had a bearing upon the question of speed and
were no doubt considered by the jury in arriving at a con-
clusion.

The same may be said concerning the question as to whether
defendant kept a proper lookout and observed the course his
automobile was taking so as to avoid collision. The testimony
is uncontradicted that it was light enough to see ob-
jects on the street for a considerable distance ahead.          2
There was no sidewalk at that point so that it was to
be expected that pedestrians might be traveling on the paved
street. It was the duty of the defendant, in driving his car,
to keep constant lookout ahead to avoid collision. *Barker* v.
*Savas*, 52 Utah, 262, and cases cited at page 269, 172 Pac. 672;
*State* v. *Biewen*, 169 Iowa, 256, 151 N. W. 102. The witness
O. C. Anderson saw the boy walking north on the extreme
westerly side of the pavement. He could not only see the
boy plainly, but even saw him smile just before he was struck.
In the light of such evidence it cannot be successfully con-
tended that the boy could not be seen by the driver of the
car if he had been looking in the direction he was traveling.
It is contended, however, that the boy came out suddenly
from behind the wagon immediately in front of defendant's
car, and that therefore the accident was unavoidable. It is
true there was evidence to that effect. Such evidence, how-
ever, was in conflict with the evidence heretofore considered.
The jury determined it adversely to defendant's contention.
It was justified in so doing, not only because of evidence on
the part of the state to the contrary, but also because the

evidence relied on by defendant in that regard was inherently weak and unsatisfactory. The evidence discloses that the pavement on the street was 18 feet wide; that the boy was struck by the right side of the front end of the car at the extreme westerly side of the pavement; hence there must have been at least 9 or 10 feet of space between the wagon and the point where the boy was struck. If defendant's automobile was traveling 23 or 24 miles an hour, as he admitted, and he was only 6 feet from the rear end of the wagon when the boy appeared from behind it, the question arises: how could the boy travel 9 or 10 feet while defendant's car was traveling only 6? A simple mathematical calculation demonstrates the fact that defendant's car running at a speed of 24 miles an hour would have traveled a distance of 6 feet in less than one-fifth of a second. So that, however honestly conceived, defendant's theory is palpably untenable. This, together with the fact that other witnesses testified that the wagon had passed five or six minutes before the accident occurred, probably engendered in the minds of the jury serious doubt as to the veracity of defendant's witnesses in this regard. In any event the nature and character of the testimony was such as to make it a question for the jury.

Whether or not the defendant had his machine under safe, proper, and immediate control is a matter of little or no consequence in the instant case. If he did have it under complete control, as contended, the jury in all probability came to the conclusion that he ought to have avoided the accident.

The trial court did no err in denying the motion for a directed verdict.

O. C. Anderson, testifying for the state, after describing the accident, was asked by the state's attorney: ''Did you hear any warning?'' This was objected to by defendant's counsel as being irrelevant, immaterial, and not within the issues raised by the information. The objection was overruled, and the witness answered: ''No.'' This is relied on as error to reverse the judgment. It is alleged in the information that

defendant "without due caution and circumspection negligently, recklessly, wantonly, willfully, and unlawfully" did the things complained of. The information was not demurred to either generally or specially. We are of the opinion that the charges made in the information were broad enough to admit of the question to which objection was made. If defendant had desired a more specific charge as to what was meant by the words "without due caution and circumspection," he should have raised the question by demurrer specifying the particular grounds of objection. Comp. Laws Utah 1917, § 8890. In any event the error, if any, was harmless; for, if defendant was guilty at all, he was guilty irrespective of whether or not any warning was given. Comp. Laws Utah 1917, § 9231.

During the course of the trial the state's attorney, referring to the wagon loaded with brush, asked the state's witness, a Mr. Long, if the "occasion of the wagon going north was remarked at the time." The witness, over defendant's objection, was permitted to answer: "Yes; we were remarking about it when it went back." The ruling of the court is assigned as error. It appears from the evidence that the wagon referred to after passing defendant's automobile and traveling north 600 or 800 feet at the request of defendant, returned to the scene of the accident. The witnesses Long and McCleary both testified that they, with one Butterfield, were together near the point where the collision occurred, and that the wagon passed that point going north five or six minutes before the accident occurred. It seems that the question objected to related to what was said by these witnesses between themselves when the wagon came back. It is manifest that defendant was not prejudiced by the admission of the evidence notwithstanding it may have been incompetent.

Earl Richardson who drove the wagon to which reference has been made, sworn as a witness for the defendant, in answer to a question propounded by defendant's counsel, testified that he had no recollection of seeing an automobile pass

State v. Lake, 57 Utah 619

along State street at all. On cross-examination he was asked by counsel for the state if an automobile passed him while in front of McCleary's. This is the place where the accident happened. The witness replied he had no recollection of it, and said the accident did not occur while he was there. Later, on redirect, defendant's counsel asked the witness if on that occasion he saw an automobile between a point in front of McCleary's and a certain point north of a water tank which was being driven at a reckless or rapid rate of speed. The question was objected to as immaterial and the objection sustained. Defendant contends that the rejection of the testimony is reversible error. The contention is without merit. The witness having testified on his examination in chief that he had no recollection of having seen an automobile at all on that occasion, and on cross-examination that he had no recollection of having seen one at the point of the accident, and that no accident happened while he was there, there certainly was no justification whatever for asking him if he saw an automobile driven at a reckless rate of speed. Besides this, the question called for a bald conclusion of the witness, and the conclusion of the witness was, of course, immaterial. The objection was properly sustained.

Finally, appellant contends that the court erred in refusing to grant his motion in arrest of judgment. The motion alleges that the information does not state facts sufficient to constitute a public offense; that it does not charge any specific act of commission or omission which caused the death of Le Roy Anderson, or which constitutes the doing of an act without due caution and circumspection.

In addition to alleging that the automobile was driven negligently, recklessly, wantonly, willfully. and unlawfully, as heretofore stated, the information charges that the automobile was so driven by defendant "without observing the course the said automobile was taking to see if the said course was obstructed or about to be obstructed by any persons or other obstacles, so as to endanger the life and limb of persons being then and there upon said public highway as aforesaid,

to wit, at a rate of speed in excess of 25 miles an hour,'' etc.

It is difficult to see how the facts and circumstances relied on by the state could be more clearly and specifically stated than they are in the information in the present case. That the information states facts sufficient to constitute a public offense there can be no serious question. Not only does it state facts sufficient to constitute a public offense, but, as we have already shown, the facts proven are sufficient to sustain the judgment.

Involuntary manslaughter is committed when the homicide occurs ''in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.'' Comp. Laws Utah 1917, § 8027, subd. 2.

Further comment upon this feature of the case would be an unnecessary consumption of time and space. The motion in arrest of judgment was properly denied.

Many authorities have been cited by both appellant and respondent in support of their respective contentions. Such as are at all pertinent will no doubt be noted by the official reporter. We have deemed it unnecessary to cite them in the body of the opinion.

As far as the writer is informed, there has thus far never been a conviction in the state of Utah followed by punishment for the killing of a human being in an automobile accident, notwithstanding scores of people have been thus killed, and, no doubt, many of them because of gross and inexcusable negligence. As long as the owners of automobiles can protect themselves by insurance against the consequences of their own, or their drivers', negligence, just so long, we may rest assured, mere civil remedies will have little or no effect in preventing the almost daily occurrence of these unfortunate accidents with their direful results. A rigid enforcement of the criminal law in such cases where criminal negligence can be established seems to be the most effectual remedy that can be adopted.

The judgment of the trial court is affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.