## STATE v. MARTIN.

No. 3972.    Decided July 28, 1923.    (217 Pac. 966.)

1. HOMICIDE—EVIDENCE HELD TO SHOW CRIMINAL NEGLIGENCE IN
   DRIVING AUTOMOBILE AT RECKLESS AND DANGEROUS SPEED AND
   PROXIMATE CAUSE OF DEATH. In prosecution for involuntary
   manslaughter, evidence *held* to show criminal negligence in
   driving automobile at reckless and dangerous rate of speed
   at street intersection and that it was proximate cause of pedes-
   trian's death.

2. HOMICIDE—NEGLIGENCE OF THIRD PERSON HELD AT MOST A CON-
   CURRING CAUSE OF ACCIDENT AND NOT A DEFENSE. In prosecu-
   tion for involuntary manslaughter from defendant's criminal
   negligence in driving his automobile at a reckless and danger-
   ous rate of speed at a street intersection, thereby causing
   death to a pedestrian, where defendant's negligence was estab-
   lished beyond reasonable doubt, possible negligence of another
   driver in collision with defendant's car was at most a concur-
   ring cause of the accident, and not an independent intervening
   cause that defendant could not have foreseen, and hence was
   not available as a defense.

3. CRIMINAL LAW—REFUSAL TO INSTRUCT AS TO PROXIMATE CAUSE,
   IF ERROR, NOT AVAILABLE FOR REVERSAL. In prosecution for in-
   voluntary manslaughter where evidence of defendant's crim-
   inal negligence in driving his automobile at a reckless and
   dangerous rate of speed, thereby causing death of a pedestrian
   at a street intersection, and instructions clearly informed the
   jury that defendant should not be found guilty unless his neg-
   ligence caused the act, if there was error in failure to instruct
   that before it could find defendant guilty it must appear that
   the death was the natural and probable consequence of de-
   fendant's manner of driving a car, and that his acts or omis-
   sions were the proximate cause of the death, it was not avail-
   able for reversal.

Appeal from District Court, Third District, Salt Lake
County; *G. A. Iverson*, Judge.

Oscar Martin was convicted of involuntary manslaughter,
and he appeals.

AFFIRMED.

*Ben S. Crow* and *L. E. Tripp,* both of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty Gen., for the State.

WEBER, C. J.

Defendant was charged with involuntary manslaughter committed May 19, 1922, the information being in substance as follows:

That the said Oscar Martin on the 19th day of May, 1922, at Salt Lake county, state of Utah, he being then and there engaged in the commission of a lawful act which might result in death, to wit, operating a motor vehicle commonly called an automobile, was driving the same on a public highway, to wit, on East Third South street, in Salt Lake county, state of Utah, in a westerly direction, near to and aproaching the intersection of Eighth East street. That at the western part of the said intersection of Third South and Eighth East streets one Clarice Pyper Anderson was lawfully walking in a northerly direction at about the center of the west side of the intersection, on that part of the intersection which is commonly used by pedestrians in crossing the west side of the said intersection. That it thereby became and was the duty of the said Oscar Martin upon approaching the said Clarice Pyper Anderson to have the motor vehicle which he was driving under safe, proper, and immediate control, to use due and proper care, caution, and circumspection in the use and management and control of said motor vehicle so as to avoid colliding with or running into persons lawfully walking along or crossing or waiting upon the said East Third South street, to operate said motor vehicle at the time and place in a careful and prudent manner and at a rate of speed that will not endanger the life or limb of any person and keep the same within safe and immediate control at all times. That the said Oscar Martin, disregarding his duty in that behalf, without due caution and circumspection, negligently, recklessly, wantonly, wilfully, and unlawfully, at the said time and place and while

the said Clarice Pyper Anderson was walking in a northerly direction, did propel and drive said motor vehicle along East Third South street and at a point about the center of the western part of the intersection aforesaid, in a manner which was not careful and prudent and at a rate of speed that could endanger the life or limb of any person and without having said vehicle within proper, safe, and immediate control, and without observing the course that the said automobile was taking, to see if the said course was obstructed or about to be obstructed by any person or other obstacles, so as to endanger the life and limb of persons being upon said public highway, did drive said automobile at a rate of speed in excess of 25 miles per hour; in consequence whereof the said Oscar Martin, without due caution and circumspection and without warning, carelessly, wantonly, wilfully, and unlawfully, in the manner and at the time and place aforesaid, the said motor vehicle on and against the said Clarice Pyper Anderson did propel and drive, throwing the said Clarice Pyper Anderson to the pavement with great violence, thereby inflicting upon the body of said Clarice Pyper Anderson divers mortal fractures, bruises, contusions, and wounds, from which she languished a short time and then on the 19th day of May, 1922, at the county of Salt Lake, did die and so the said Oscar Martin in the manner and form aforesaid, while in the commission of a lawful act which might produce death, without due caution and circumspection, carelessly, recklessly, wantonly, wilfully, and unlawfully in the manner and at the time and place aforesaid, but without malice, the said Clarice Pyper Anderson did unlawfully kill.

The defendant was found guilty by a jury and was sentenced to six months' imprisonment in the county jail. He appeals from that judgment.

Clarice Pyper Anderson was killed by being struck by a Marmon car driven by appellant on the evening of May 19, 1922. The accident occurred at the intersection of Third South and Eighth East streets, Salt Lake City; both streets being much traveled. With Martin in the automobile were one male and two female companions. The accident happened at 8:30 in the evening. It was raining, and the paved

street was wet and slippery. Immediately prior to the accident a street car had stopped at the intersection. While appellant was traveling west on Third South street, at a rate of at least 25 miles per hour, he ran into and collided with a car driven by Dr. Eardley, who was proceeding south on Eighth East street. As the result of this collision Martin's car swerved to the south and west, killing Miss Anderson, who had been standing on or near the curb on the south side of Third South street. The state's witnesses testified that at the time of the collision Martin was driving at a speed of between 30 and 40 miles per hour, and the several witnesses were corroborated by the fact that after the collision the appellant's car ran 51 feet to the south curb of Third South along the curb 15 feet, then climbed the curb and ran 12 feet on top of it, and thence down again and across to the north side of the street, in all a distance of 233 feet, before the car was finally stopped. Appellant's criminal negligence is clearly established by his own testimony. At that place, with the pavement wet and slippery, with a street car at the intersection, and under all the attendant circumstances, 25 miles per hour was a reckless and dangerous rate of speed, and it was this speed that was the proximate cause of the accident.

It is argued by counsel for appellant that the collision of the cars was due to Eardley's negligence. Assuming that Eardley was also negligent, it would be no defense for Martin. Eardley's negligence would at most be a concurring cause of the accident, not an independent intervening cause that appellant could not have foreseen. When approaching the intersection, appellant passed a car driven by a Mr. Woolley, who also was proceeding west on Third South street. Woolley testified that before he was passed by Martin he saw the lights of the Eardley automobile. Appellant testified that he did not see the Eardley car until within 10 or 12 feet of it, and that when he saw that car he speeded up and in doing so the left fender of his car "ticked" the street car which had just started up, and the collision with the Eardley car occurred.

Appellant testified that he did not know whether the

Eardley car struck his or whether his car struck Eardley's, but that after looking at the car he was convinced "that he had struck me." It is insisted by counsel that the Eardley car struck appellant's car. Assuming the contention to be true, it cannot avail appellant. His negligence is established beyond all reasonable doubt by his own testimony. If he had been operating his car with due caution and circumspection, he would have seen both the street car and the lights of Eardley's car before reaching the intersection. Eardley testified that he stopped his car north of the cross-walk on Third South waiting for the street car to start, that at that time appellant's car was about a quarter of a block east, and that he had just shifted the gears when he was hit. In this he was corroborated by a disinterested witness.

When approaching the intersection, it was appellant's duty to lessen the speed of his car; but he disregarded the intersection and the street car, paid no attention to what was on the street, and continued with a speed which constituted a violation of the law, and which was dangerous, even if his testimony is accepted that he did not exceed 25 miles per hour. It was his recklessness and the dangerous speed with which he was driving his automobile that was the proximate cause of the accident.

Appellant requested that the court instruct the jury that before it could find him guilty it must appear that the death of Clarice Anderson was the natural and probable consequence of the manner in which defendant was driving the Marmon car, and that the defendant's acts or omissions were the proximate cause of the death of Clarice Anderson.

We agree with counsel's argument that if appellant's actions or omissions were not the proximate cause of the girl's death—if there was an independent intervening cause which appellant could not foresee—if, in other words, defendant's negligence was not the cause of the homicide, he could not be guilty of the crime with which he was charged.

"To warrant the conviction of manslaughter on account of the killing of a human being by the negligent operation of an automobile, the conduct of the accused must have been the proximate

cause of the death." Berry, Automobiles, § 1569, citing *People* v. *Barnes*, 182 Mich. 179, 148 N. W. 400.

But it was not necessary for the court to charge the jury in the exact language of the requests. The instruction given clearly informed the jury that the defendant should not be found guilty unless his negligence caused the accident. The words "proximate cause" would not have conveyed any additional information to the jury. The jury could not have been misled by the court's omission to use the word "proximate." Instructions Nos. 4 and 5 were as follows:

(4) "Before you can find the defendant guilty of involuntary manslaughter as charged in the information, you must find from the evidence, beyond a reasonable doubt: (a) That the defendant on or about the 19th day of May, 1922, was engaged in the operation of a motor vehicle commonly called an automobile, and that the operation of said motor vehicle was an act which might produce death; (b) that in the operation of said motor vehicle the defendant acted without due caution and circumspection in the respects substantially as alleged in the information; (c) that such failure of defendant, if you so find, to use due caution and circumspection in the operation of said automobile, was the cause of the death of said Clarice Pyper Anderson, in the manner, substantially, as charged in the information; (d) that the operation of said automobile and the injury to said Clarice Pyper Anderson, which resulted in her death, occurred in Salt Lake County, state of Utah.

(5) "You are instructed that the gist of the offense of involuntary manslaughter is the reckless, heedless, and wanton criminal negligence of a person doing or failing to do some act which results in the death of another; and before you can find the defendant guilty in this case you must find from the evidence, to your satisfaction, beyond a reasonable doubt, that the act or acts complained of were done, or omitted to be done, by the defendant in a reckless, heedless, wanton, negligent manner, and with knowledge of the fact that the probable result of the commission or omission of such act or acts might be a violent injury to another person, and you must find that the defendant was guilty of such reckless, heedless, wanton, negligent conduct in the operation and control of the automobile as to charge him with a knowledge that injury or death to another might probably result from the commission or omission of such act or acts."

The question of the cause of the accident was thus fairly submitted to the jury in plain and understandable language.

In *State* v. *Schaeffer*, 96 Ohio St. 215, 117 N. E. 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137, the instructions were

not as full and complete as in the present case. Complaint was made that no instruction had been given on proximate cause. The court said, in part:

"The seventh and last error complained of relates to the matter of proximate cause, and grows out of this part of the charge: 'If you shall find from the evidence, beyond a reasonable doubt, that this defendant, E. E. Schaeffer, was at that time violating the provisions of that act and struck this child with his automobile, and also find beyond a reasonable doubt that the child died from the effects of such injury, then your verdict should be guilty as charged in the indictment.'

"The trial court here, in effect, charged the correct legal proposition as to proximate cause, without, however, putting on the label. But it is not always necessary to use the terms 'proximate' or 'proximate cause' in order to correctly charge thereon. No question was raised in dispute of the fact that the automobile killed the child, and it further appearing that this was the undoubted result of the unreasonable and improper speed at which the automobile was then being operated, there was no prejudicial error resulting to the defendant."

If it was error not to instruct specifically as to proximate cause, it was not prejudicial and is not available for reversal.

This case is of importance to the public as well as to the defendant. Speed maniacs ought to be vigorously prosecuted—not so much for the sake of punishing them as to protect the public. This thought is well expressed in the opinion in *State* v. *Schaeffer*, supra, in the following paragraph, which we adopt and approve:

"The day has long been here when the authorities should exercise every power under every law of the state to protect the safety of the public, its life, its limb; and in order to meet every possible situation of danger, some such general comprehensive, and elastic statute as section 12603 [which is substantially that of Utah] is absolutely necessary. The careful, conservative driver need have no fear of it. The reckless, wanton speed maniac needs to be kept in fear of it. The life of the humblest citizen must be placed above the gratification of the motor maniac, who would turn the public highways into a race course. Mere civil liabilities are not sufficient to protect the public. Five dollars fine and costs is a joke in most cases."

What was said by this court in *State* v. *Lake*, 57 Utah, 619, 196 Pac. 1015, may well be repeated here:

"As far as the writer is informed, there has thus far never been.

a conviction in the state of Utah followed by punishment for the killing of a human being in an automobile accident, notwithstanding scores of people have been thus killed, and no doubt many of them because of gross and inexcusable negligence. As long as the owners of automobiles can protect themselves by insurance against the consequences of their own, or their drivers', negligence, just so long, we may rest assured, mere civil remedies will have little or no effect in preventing the almost daily occurrence of these unfortunate accidents with their direful results. A rigid enforcement of the criminal law in 'such cases where criminal negligence can be established seems to be the most effectual remedy that can be adopted."

Judgment affirmed.

GIDEON, THURMAN, and CHERRY, JJ., concur.

FRICK, J., did not participate herein.