(No. 5659.   July 3, 1931.)

STATE, Respondent, v. JONES FRANK, Appellant.

[1 Pac. (2d) 181.]

Leo McCarty, for Appellant.

Fred J. Babcock, Attorney General, and Maurice H. Greene, Assistant Attorney General, for Respondent.

VARIAN, J.—Defendant, a Nez Perce Indian, was convicted of involuntary manslaughter, and appeals. About 11 o'clock on the night of May 17, 1930, appellant and his family left Lewiston in an automobile to return to their home near Spaulding, Idaho. Appellant drove the car and with him on the front seat was his wife, who held their two months old baby, strapped to a board in the Indian manner, in her arms, while two children occupied the rear seat with an Indian by the name of Antoine Broncheau, who was intoxicated when the party left Lewiston. Broncheau became ill, wanted to vomit, and the car was stopped after it had crossed the bridge and neared the dam above town. Broncheau then got out. At this time a taxicab from Lewiston, en route to Lapwai with passengers, drove up from behind and an offer was made by one of the passengers to drive appellant's car. The latter stated he was all right and would drive it himself and the taxi went on. Broncheau returned to the back seat and the party proceeded on its way. According to appellant, his wife, and other witnesses, the road was full of holes and it was necessary for him to drive from side to side in order to avoid them, his tires not being in good condition. After a car going in the same direction passed them, another appeared coming toward them around a curve. Broncheau seized appellant from behind, causing him to look back when the car went off the grade, through a barbed-wire fence snapping off two six-inch posts, and fifty feet into a grain-field where it stopped without having turned over. The baby was hurled through the windshield, sustaining injuries from which it later died while en route to the hospital at Lewiston. The roadway was on a fill

seven or eight feet high at the place the car went off. Other features of the evidence will be discussed later in considering the several points raised by this appeal.

The information charged that on or about May 18, 1930, at the county of Nez Perce, state of Idaho, the defendant committed the crime of manslaughter; "who then and there did while under the influence of intoxicating liquor, drive and operate a motor vehicle, to-wit: an automobile on a public highway of the State of Idaho, in the County of Nez Perce. That by reason of the said Jones Frank driving said motor vehicle while under the influence of intoxicating liquor, the said Jones Frank did then and thereby unlawfully and feloniously drive said motor vehicle off of said highway and over the bank of said highway into a fence and fence post, thereby causing one Earnest Frank, a passenger in said Motor vehicle to be mortally wounded by causing the head of the said Earnest Frank to come in contact with some solid object which object is unknown and which object crushed and fractured his skull from which effects the said Earnest Frank did, within twenty-four hours thereafter and as a result from said injuries caused thereby, die. And so the said Jones Frank did in the manner and form · aforesaid, unlawfully and feloniously but without malice kill the said Earnest Frank and commit the crime of Manslaughter."

Appellant moved to quash the information for want of jurisdiction because appellant was not given a preliminary hearing on the charge contained in the information. In other words, he contends that the complaint before the committing magistrate charged manslaughter caused "by operating a motor vehicle upon the public highway of the State of Idaho, negligently and carelessly and without due caution" and he was "held to answer on said charge," while the information charges manslaughter caused "by driving an automobile upon the public highway in the State of Idaho, while under the influence of intoxicating liquor" upon which charge no preliminary examination was held. The motion to quash was denied which is assigned as error. The record of the proceedings before the committing

magistrate is not here, neither is the complaint filed therein, nor the order of commitment binding the defendant over to the district court. Appellant's counsel filed an affidavit setting forth the above facts, which is all the record before us as to what took place prior to filing the information.

*State v. McGreevey,* 17 Ida. 453, 105 Pac. 1047, cited by appellant, is not in point because in that case the defendant was held to answer a charge of manslaughter while the information charged murder in the first degree. Here appellant was, if we can assume the fact, bound over to answer a charge of manslaughter caused by negligently and carelessly driving an automobile on the public highway, while the information charges manslaughter, caused by operating an automobile on said highway while intoxicated. There is no difference in degree as to the crime mentioned in the commitment and that charged by the information, both constitute involuntary manslaughter under C. S., sec. 8214, as amended by Sess. Laws 1921, chap. 155, p. 347.

This court has held that an information can be filed charging only the offense for which the accused was committed by the magistrate. (*State v. McGreevey, supra.*) In the subsequent case of *State v. Montgomery,* 48 Ida. 760, 285 Pac. 467, we followed the rule adopted by California, where the constitutional provisions and statutes are somewhat similar to our own, holding that the accused might be held to answer for any offense disclosed by the preliminary hearing. (See *State v. Jester,* 46 Ida. 561, 270 Pac. 417; *People v. Bianchino,* 5 Cal. App. 633, 91 Pac. 112; *People v. Foster,* 198 Cal. 112, 243 Pac. 667.) And after a valid commitment and information filed thereon, jurisdiction of the district court does not depend upon the complaint filed in the magistrate's court and defects therein are immaterial. (*State v. Main,* 37 Ida. 449, 216 Pac. 731.) Not having the record before us we are unable to determine whether there is a variance between the information and commitment, sufficient to warrant a reversal of this case.

Appellant demurred to the information upon the ground that it does not state the particulars of the offense

charged, under C. S., sec. 8827; that it is duplicitous in that it charges manslaughter and the crime of driving a motor vehicle upon a public highway while intoxicated and that it does not state facts sufficient to constitute a public offense. Overruling of the demurrer is assigned as error. In charging involuntary manslaughter the information need not set forth all the facts and circumstances constituting the offense. (*State v. Brooks,* 49 Ida. 404, 288 Pac. 894; *State v. Gee,* 48 Ida. 688, 284 Pac. 845; *State v. Gondeiro,* 82 Mont. 530, 268 Pac. 507.) Nor is the information duplicitous in the particulars alleged in the demurrer. (*State v. Brooks, supra.*) The information was sufficient under the rule stated in *State v. Brooks, supra; State v. Gee, supra.*

In proper time appellant moved in arrest of judgment on the grounds that the information was duplicitous; that there was a variance between the allegations of the information and the proof; that the evidence is insufficient to sustain the conviction. The last two particulars are not grounds for demurrer, under C. S., sec. 8870, and are, therefore, not grounds for the motion under C. S., sec. 9019, to the effect that it may be founded upon any defects in the indictment that is ground for demurrer, unless it has been waived by failure to demur. (*State v. McClurg,* 50 Ida. 762, 300 Pac. 898; *State v. Knutson,* 47 Ida. 281, 274 Pac. 108.) We have hereinbefore held that the information was not duplicitous.

Appellant has assigned as error numerous statements and comments of the trial judge in ruling upon objections to the evidence and during the course of the trial, tending unduly to emphasize the theory of the prosecution to the prejudice of appellant. Such statements and comments, not being any "ruling, instruction, order, decision, judgment" or "judicial acts of the court or judge thereof" are not deemed excepted to under Sess. Laws 1927, chap. 24, sec. 1. Appellant interposed no objection and did not except to any of the remarks of the trial judge complained of and we cannot, therefore, review these as-

signments of error. (*State v. Keyser*, 38 Ida. 57, 219 Pac. 775.)

Appellant assigns as error the insufficiency of the evidence to justify the verdict. It is conceded that it was incumbent upon the state, under this information, not only to establish that appellant was driving his car upon a public highway while under the influence of intoxicating liquor (which of itself is unlawful, Sess. Laws 1927, chap. 260, art. 11, sec. 2, p. 484), but that his unlawful driving was the proximate cause of the death of appellant's son. (*State v. Gee, supra; Thompson v. State,* 41 Wyo. 72, 283 Pac. 151; *State v. Martin,* 62 Utah, 69, 217 Pac. 966; *State v. Satterfield,* 198 N. C. 682, 153 S. E. 155; *State v. Whaley,* 191 N. C. 387, 132 S. E. 6; *Jackson v. State,* 101 Ohio St. 152, 127 N. E. 870; *State v. Nichols,* 34 N. M. 639, 288 Pac. 407. See *State v. Brooks, supra,* p. 410.)

The evidence as to intoxication is conflicting and there is no direct evidence that appellant was under the influence of intoxicating liquor at the time he wrecked his car resulting in the death of his infant son. Frank and his wife, both testified that appellant did not drink anything intoxicating at any time during the day preceding, or night of, the wreck. They are corroborated in part by the testimony of several Indians. No witness testified that he saw appellant drink intoxicating liquor on the day or night of the accident. Those who were in the taxicab following appellant out of Lewiston say, in effect, that (an hour before the wreck) appellant's car was "weaving back and forth across the road" from which they assumed he was under the influence of intoxicating liquor. While members of the party testify that they conversed with Frank, both at the time he stopped to permit Broncheau to vomit and after the wreck, none of them state that they noticed any odor of intoxicating liquor from his breath, or that he staggered, was ill, or showed other ordinary evidences of intoxication. It is undisputed that the road, which had been oiled, had holes in it and appellant contended that it was necessary to "weave" his car in order to avoid them since his tires were not in very good condition. He met several cars on

the highway and passed them all successfully, being on his own side of the road at the time of passing. The drunken passenger, Broncheau, testified as follows:

"Q. Did you and the defendant have anything to drink?

"A. Jones Frank had a drink.

"Q. How many drinks did he have?

"A. Well, he had a bottle.

"Q. Did he take more than one drink while you were with him?

"A. I took two drinks that is in certain places and I got drunk. . . . .

"Q. Was that while you were in a car going out to Lapwai?

"A. Yes.

"Cross-examination:

"Q. Did you get drunk, Antoine, from the drinks that Jones Frank took?

"A. No.

"Q. You got drunk from the drinks you took yourself?

"A. Yes.

"Q. Did you and he both drink the same thing?

"A. Yes. . . . .

"Q. That night you were pretty drunk, weren't you?

"A. Yes.

"Q. You don't remember much that happened at all, do you?

"A. Well, I remember just very little; that time I was on the other side of the sawmill . . . . from the rock crusher to the sawmill, and then I don't remember.

"Q. Then you don't know the condition of Jones Frank on that night.

"A. Well, he was feeling good.

"Q. He was feeling good?

"A. Yes."

He is very careful not to say when appellant "took a drink" or that he drank anything intoxicating.

The prosecuting attorney asked the witness Coburn, deputy sheriff, the following questions, which he answered as set forth:

"Q. Do you recall a conversation that took place in the office of the sheriff on that date (May 19, 1930) when the defendant and his ·wife and two daughters and myself were present?

"A. I do.

"Q. I will ask you to state what that conversation was with reference to the defendant being drunk or sober, at the time of the accident?"

"Objection that question is leading and suggestive overruled.

"Q. State all the conversation as near as you recall.

"A. Well, Mr. Durham asked the defendant if he was drunk and he said he was; and his wife said he was drunk; and his daughter said he was drunk. . . . .

"Q. What was the occasion of that conversation?

"A. Well, it was in· connection with this wreck and the accident of the day before."

No proper objection was urged as to the volunteered testimony concerning what the wife and daughter said and no mention is made of the time to which appellant's being "drunk" referred. This conversation is denied by appellant and his wife and daughter, claiming that it referred to the condition of the Indian passenger, Broncheau, not to Frank.

As to what transpired when the accident happened, it was dark and the witnesses in the returning taxicab could not see what took place in appellant's car. They only saw by its lights that it left the highway. Appellant testified that. a car going in the same direction passed him; that the lights from the taxicab rounding a curve 200 feet away blinded him; that Broncheau seized him from behind, telling him to "step on it"; that he turned his head back toward Broncheau and the car went off the grade. The tracks of appellant's car show that it traveled a distance of 200 feet after the wheels on the right side of the car left the oiled portion of the road, gradually approaching the edge of the roadbed, to the point where the wheels on the left side started down the incline. Conceding that all this evidence is sufficient to sustain the inference that appellant

was under the influence of intoxicating liquor in some degree at the time of the accident, it is insufficient to sustain the further inference that his condition was such that he did not have full possession of all his faculties, or that his driving while under the influence of intoxicating liquor was the proximate cause of the accident.

The accident occurred late Saturday night or early Sunday morning (May 18, 1930) and it was error to admit evidence of appellant's being under the influence of liquor on the Thursday before (May 15th), the time being too remote from the accident. The same ruling applies to the interrogation by the court asking the witness, Conley Seth, if he had seen appellant drunk recently, within the last month, in reply to objection by appellant to the question of the prosecuting attorney, "Did you ever see the defendant drunk?" which was too indefinite. The court's question was not objected to and the matter is not properly here but is referred to in case of a new trial.

The evidence of appellant's having been seen in school in 1893 and again in 1906, as tending to rebut his statement that he could not read was wholly incompetent in the absence of any testimony showing he there learned to read.

Appellant assigns as error the giving of instruction No. 2, defining involuntary manslaughter in the language of C. S., sec. 8214, before its amendment by Sess. Laws 1921, chap. 155, p. 347, as the unlawful killing of a human being without malice "in the commission of an unlawful act not amounting to a felony," the amended definition reading "in the perpetration of or attempt to perpetrate any unlawful act, other than arson, rape, robbery, burglary, or mayhem." Since the facts in the instant case do not bring it within any of the exceptions of the amended statute, the giving of this instruction was harmless error.

As to the other instructions complained of, we have considered them and hold that they correctly state the law as applied to the facts of this case.

The state's witness, Broncheau, as stated, was riding in the back seat of appellant's car at the time of the accident. On cross-examination he was asked, "You don't know anything at all about the wreck?" On objection he was not permitted to answer because the subject of the wreck was not gone into on direct examination, the court remarking, "Well, they didn't go as far as the wreck, Mr. McCarty, and according to your statement, he had passed out then." Counsel should have been permitted to show whether the witness remembered anything about what occurred at the wreck, or immediately before. C. S., sec. 8034, is broad enough in its terms to cover this situation. He was entitled to interrogate the witness in any event. If in regard to new matter the state would then have the privilege of cross-examination. (C. S., sec. 8034. See *People v. Westlake*, 124 Cal. 452, 57 Pac. 465.)

For the reasons herein mentioned the judgment is reversed and the cause remanded with directions to grant a new trial.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.