No. 30,465.

THE STATE OF KANSAS, *Appellee*, v. ELMER SUTTON, *Appellant*.

(14 P. 2d 639.)

Opinion filed October 8, 1932.

*Eustace Smith* and *Claude E. Chalfant*, both of Hutchinson, for the appellant.

*Roland Boynton*, attorney-general, *Max Wyman*, county attorney, and *John Fontron*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Elmer Sutton was prosecuted and convicted of the larceny of $62.15, and has appealed from the judgment.

The only complaint is that the conviction is not adequately sustained by the evidence, but defendant has not undertaken an analysis of the evidence or the pointing out of any particular deficiency or shortage. Counsel for defendant says that the conviction in the case was not only against the weight of the evidence but absolutely

contrary to all the evidence in the case. What the lack is he does not state, but did say:

"As a matter of fact the defendant was convicted because of the fact that he is one of God's unfortunates, an habitual drunkard, and to use the language of the underworld a 'two-time loser' in the penitentiary. Both of these terms served in the penitentiary by this appellant were for liquor violation. He has never been a thief and never been suspected of being a thief. Once before he was tried for stealing wheat and the case dismissed by the magistrate upon a preliminary examination."

The principal facts as shown by the record of the evidence are substantially as follows: On December 12, 1930, after it was dark, Elmer Sutton and Harry McInteer drove up to the station of E. Bourquin, at Hutchinson, in Sutton's car, and asked for the repair of a light socket on the car. In making the repair, Bourquin had occasion to go to his locked desk in the office to obtain a screw driver. He was followed into the office by the defendant and McInteer, and there he unlocked the desk and took out the screw driver. In the desk he had a sack containing the money mentioned. He then returned to the car and made the repair and after telling them the cost of the repair, twenty-five cents, they declined to pay the charge, stating they had no money, and "what are you going to do about it?" After some wrangling about the charge another customer drove up to the filling station, asked for service, and Bourquin started to wait on him, and happening to look towards the office, saw a shadow of a man in there, and later McInteer came out, and hastily entered the car which Sutton was diligently cranking, and they drove away at a fast rate, as fast as a Ford car could be made to run. Noticing the movements, Bourquin went up to the station and found the desk had been pried open and the money taken. He entered his own car, standing near by, and pursued Sutton and his companion, and after going a short distance, caught up with them, drove in front of them, and the Ford bumped into the Bourquin car. He stopped them and charged the parties with the theft of the money, searched the Ford and the persons of both parties, but did not find the money. Finally it was admitted that something had been thrown from the Ford into the weeds at the side of road as Bourquin was overtaking them, and both defendant and McInteer went back to help Bourquin look for the money. After searching back for about the length of a city block, the money was found where it had been thrown. McInteer then

admitted throwing the package there and Sutton admitted seeing a package thrown, but said he did not know it was a package of money. The police had been notified of the theft, and some of them were present when the money was found. Both Sutton and McInteer were arrested and McInteer, who was tried first, was convicted. He took an appeal, which he failed to prosecute, and it was dismissed. In Sutton's trial he placed the blame for the theft on McInteer, but what the testimony in the McInteer case was we are not informed, but it is said that each of these defendants tried to shift the blame on the other.

The evidence was both direct and circumstantial and we have no doubt of its sufficiency to uphold the conviction. There was evidence direct of the presence of the defendant at the place about the time the money was taken. It was taken and carried away in defendant's car and was in his possession during the subsequent flight. It was shown that he followed Bourquin into the office when the latter unlocked the desk, and the location of the money was disclosed to him, or at least he had the opportunity to see it. It is true no witness testified that he saw defendant taking or handling the money, but the circumstances and evidentiary facts point convincingly to the participation of the defendant in the theft. While McInteer was breaking into the desk and extracting the money the defendant was coöperating with him and was busy in cranking the car so that a quick get-away could be made with the bag of money. It is true that a number of circumstances, well authenticated and proven, is sometimes more convincing of guilt than the direct evidence of a witness who may not be telling the truth. (*State v. Hunter,* 50 Kan. 302, 32 Pac. 37; *State v. Evans,* 115 Kan. 538, 224 Pac. 492.) The flight of the defendant carrying away the stolen property was a circumstance of some force. While the flight did not raise a presumption of law that the defendant was guilty of larceny, the hurried departure in connection with other circumstances was something from which an inference might be drawn by the jury.

The instructions of the court are not included in the record, and hence we are warranted in inferring that the jury were properly advised upon the rules of law as to circumstantial evidence and of the measure of proof required to warrant a conviction.

The evidence is held to be sufficient to uphold the conviction, and hence the judgment is affirmed.