No. 25,361.

THE STATE OF KANSAS, *Appellee, v.* URBAN EVANS and DAVID ONTJES, *Appellants.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Burglary—Evidence—Ability of Bloodhounds to Follow a Human Trail.* Evidence concerning the ability of a pair of bloodhounds to follow a human trail is held to have been admissible and sufficient to form a basis for testimony tending to show they had followed a trail from the scene of a burglary to the home of the defendants.

2. SAME—*Photographs as Evidence.* Where a photograph is offered in evidence it is proper practice to introduce preliminary evidence that it is an accurate representation of the object photographed.

3. SAME—*Cross-examination of Defendant Concerning Former Plea of Guilty of Larceny.* The striking out of an affirmative answer to the question asked on cross-examination of a defendant in a criminal case whether he had pleaded guilty to a charge of larceny is not prejudicial.

4. SAME—*No Error in Instructions Concerning Bloodhounds—Evidence.* It is held that no material error was committed in the giving and refusal of instructions concerning evidence of the conduct of bloodhounds and circumstantial evidence generally.

The State v. Evans.

Appeal from Rice district court; CLYDE R. DOUGLASS, judge. Opinion filed March 6, 1924. Affirmed.

D. A. Banta, of Great Bend, for the appellants.

C. B. Griffith, attorney-general, John F. Rhodes, assistant attorney-general, and Bronce Jackson, county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: Urban Evans and David Ontjes were convicted of burglary and appeal.

The evidence tended to show these facts: A store was broken into at night and a quantity of clothing stolen. The next day a part of the stolen property was found hidden in a haystack half or three-quarters of a mile from the house where the defendants lived, another sack of clothing being later found at a somewhat greater distance from the house in the opposite direction—away from the store. On that day bloodhounds were taken to the window through which the entrance to the store had been made and told to "hunt them up." They appeared to strike a trail which they followed to and around the stack referred to and then on to the defendants' home, where they ran up to Ontjes, who was coming from a water tank with a bucket in his hand. The officers then, learning of the finding of the clothing, took the hounds to the place where the second portion referred to had been found, and there gave them the scent of some shirts forming a part of the stolen goods. The hounds again took up the trail and followed it back to the defendants' home. Shoes of the defendants were found to fit footprints near the haystack.

1. Complaint is made that the man who handled the bloodhounds was permitted to give his opinion as to their qualifications to follow a trail, instead of stating the facts upon which the jury could form their own judgment of the matter. The witness said he had been training, handling and using bloodhounds for fifteen years; that he knew the qualifications of the two dogs used in this case with reference to following human trails; that the conditions existing were such as to offer "just a medium trail" for the dogs. He was asked what their qualifications were and over objection answered "accurate." Asked if he knew of any better strain of dog for following human tracks he said they were the best—"said to be by old timers." A motion was made to strike out the quoted words and after a discussion which resulted in a reframing of the question

he answered again—"They are the best." The witness having given his opinion that the dogs were of the best strain his statement that old timers had said so was not very important and was practically withdrawn by the court's requirement that the question should be restated. We think there was a substantial compliance with the rule under which evidence of the conduct of bloodhounds is admissible. (*The State v. Adams*, 85 Kan. 435, 116 Pac. 608.)

2. Complaint is made of the admission of testimony that photographs offered by the state were correct, the objection being that they spoke for themselves. The only portion of the appellants' abstract bearing on the matter reads: "The witness F. R. Hays, was permitted, over the objection of the defendants, to look at a picture, and tell whether it was a correct representation of what he saw, stating his conclusions in relation to the matter, instead of requiring him to give a verbal picture of what he witnessed." Photographs taken in the ordinary way are of course an accurate record of the image cast by the lens upon the plate or film, but as distortion is possible through the manner in which the camera or the negative is used it is common not only to permit but to require evidence that the print is an accurate reproduction of the object photographed. (3 Jones Commentaries on Evidence, § 581.)

3. One of the defendants was asked on cross-examination whether he had not pleaded guilty to a charge of stealing chickens and been sent to the reform school. He answered, "Yes, sir; and that is the only thing I ever was guilty of." The state moved to strike out the answer as not responsive to the question and the ruling of the court sustaining the motion is complained of. The latter part of the answer was obviously not responsive, and the striking out of his admission that he had stolen chickens could not well have prejudiced the defendant.

4. In an instruction properly stating that "to justify the inference of guilt from circumstantial evidence, the facts proven from which it is asked that the guilt of the defendants be inferred must be consistent with each other and must not only clearly point to their guilt, but must be inconsistent with any other reasonable hypothesis upon which their innocence may be maintained," the court also included the statement that "when the evidence in a case consists of a chain of well authenticated and proven circumstances it is often more convincing and satisfactory and gives a stronger ground of the assurance of the defendants' guilt than the direct testi-

mony of witnesses, unconfirmed by circumstances." The defendants complain of the second of these quotations as untrue and misleading. Manifestly it is literally true, as the trial court substantially told the jury, that an inference drawn from an admitted or established (or as the court said "well authenticated and proven") fact may sometimes be and doubtless often is more convincing than the testimony of witnesses who may not be telling the truth. The statement of such an abstract truism may not have been of any substantial aid to the jury, but we see no probability that it could have misled them. Different opinions have been expressed as to the relative weight of direct and circumstantial evidence (16 C. J. 763), but the material question in the case is whether the evidence was sufficient to convince the jury beyond a reasonable doubt that the defendants were guilty, and we think the instruction given, coupled with one to the effect that the jury were the exclusive judges of all questions of fact, fairly presented that issue. (See 16 C. J. 1012; 8 R. C. L. 226, note 1.)

A request was refused to instruct that the conduct of the dogs could not be relied on as "substantive evidence" upon which a conviction might be had, but might be considered with other evidence as a circumstance. An instruction was given, however, substantially like that approved in *The State v. Adams*, supra, which we think sufficiently covered the subject.

Another instruction was refused concerning the evidence of the conduct of the bloodhounds. It was substantially like the one the court gave except for an addition to the effect that such evidence should be carefully scrutinized. We think the charge as given sufficiently covered the matter.

An instruction asked and refused, concerning the effect of circumstantial evidence, contained two paragraphs, one covered by the given instructions already referred to and the other reading: "Where circumstantial evidence constituting a single chain is relied on by the state for a conviction, each essential fact in the chain of circumstances must be found to be true by the jury beyond a reasonable doubt." There is a conflict in the authorities concerning the correctness of such an instruction as that quoted, allied in some degree with a dispute regarding the rival theories of the analogy of circumstantial evidence to a chain on the one hand or to a cable on the other. (See note, 41 L. R. A., n. s., 749.) In the present case the charge did not contain the language asked but did say that in

order to convict "the state must prove and establish each one of the material averments of the information by the evidence and beyond a reasonable doubt" and that to justify an inference of guilt from circumstantial evidence alone the proof must be absolutely incompatible with the innocence of the defendants, and incapable of explanation upon any other reasonable hypothesis than that of their guilt. The requested abstract instruction purporting to apply "where circumstantial evidence constituting a single chain is relied on by the state for a conviction" would have been of doubtful value to the jury without further explanation, and its absence is not a sufficient ground for reversal, regardless of whether the chain or cable theory is to be preferred.

Another requested instruction concerning circumstantial evidence was not materially different from the one given.

The judgment is affirmed.