(July 21, 1924.)

STATE, Respondent, v. PATRICK ALBERT SHORT, Appellant.

· [228 Pac. 274.]

CRIMINAL LAW — RAPE — EVIDENCE — CORROBORATION — PROSECUTRIX— REPUTATION FOR CHASTITY AND TRUTH.

    1. A person may be convicted of rape upon the testimony of the prosecutrix where there is no direct evidence corroborating her testimony only when her reputation for chastity and truth are

unimpeached and the circumstances surrounding the commission of the offense are clearly corroborative of her statements.

2. A judgment of conviction of rape based upon the testimony of the prosecutrix alone cannot be sustained in any event unless the circumstances surrounding the commission of the offense are clearly corroborative of her statements.

APPEAL from the District Court of the Seventh Judicial District, for Payette County. Hon. B. S. Varian, Judge.

Appellant was convicted of statutory rape. *Reversed.*

Norris & Sutton, George Donart, J. B. Eldridge and Wm. M. Morgan, for Appellant.

The statute fixing the age of consent (C. S., sec. 8262) does not render a girl under that age incapable of committing a sexual crime. (*Ex parte Nesson*, 25 S. D. 49, 125 N. W. 124, 27 L. R. A., N. S., 872; *State v. Learned*, 73 Kan. 328, 85 Pac. 293.) Therefore, if the crime charged was committed, the prosecutrix was, according to her own testimony, an accomplice and a principal in its commission (C. S., sec. 8093), and her uncorroborated testimony is insufficient to justify the verdict of guilty or to support the judgment of conviction (C. S., sec. 8957).

The withholding of evidence which was within the power, and was the duty, of the state to produce raises a strong presumption that if it had been produced it would have tended to establish the innocence rather than the guilt of appellant. (22 C. J., p. 111, sec. 53; 10 R. C. L., p. 887, sec. 35; *Beal v. Congdon*, 75 Mich. 77, 42 N. W. 685; *Tetreault v. Smedley Co.*, 81 Conn. 556, 71 Atl. 786; *State v. Hogan*, 67 Conn. 581, 35 Atl. 508; *State v. Topalovacki* (Mo.), 213 S. W. 104; *McMickens v. State*, 16 Ala. App. 78, 75 So. 626; *United States v. Mendez*, 19 P. I. 28.)

Where the prosecutrix on a charge of rape is in no way corroborated and the accused denies the charge and is corroborated in such denial, the testimony of the prosecutrix is insufficient to warrant a conviction (*State v. Trego*, 25 Ida. 625, and cases therein cited on page 648), and where

the truth of the account given by the prosecutrix, as to what occurred at the time and place she asserts the crime was committed, is improbable her uncorroborated testimony is not sufficient to justify a verdict of guilty nor to support a judgment of conviction. (*State v. Baker*, 6 Ida. 496. 56 Pac. 81; *State v. Anderson*, 6 Ida. 706, 59 Pac. 180; *State v. Clark*, 27 Ida. 72, 146 Pac. 1107; *State v. Andrus*, 29 Ida. 11, 156 Pac. 421; *Morris v. State*, 9 Okl. Cr. 241, 131 Pac. 731; *Allen v. State*, 10 Okl. Cr. 55, 134 Pac. 91; *State v. Hobson* (Mo.), 177 S. W. 374; *Ex parte Ledington* (Okl. Cr.), 192 Pac. 595; *Force v. State*, 105 Neb. 175, 179 N. W. 387, and cases cited.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

The prosecutrix in a statutory rape case is not an accomplice in the commission of the crime. (C. S., sec. 8262; *State v. Hilberg*, 22 Utah, 27, 61 Pac. 215; *People v. Bernom*, 29 Cal. App. 424, 155 Pac. 1021; *Yeager v. United States* (D. C.), 16 App. Cas. 356; *Price v. State*, 64 Tex. Cr. 448, 142 S. W. 586; *Whittaker v. Commonwealth*, 95 Ky. 632, 27 S. W. 83; *Bond v. State*, 63 Ark. 504, 58 Am. St. 129, 39 S. W. 554; *State v. Henderson*, 84 Iowa, 161, 50 N. W. 758; *Price v. State*, 56 Tex. Cr. 82, 119 S. W. 99; *Radke v. State*, 107 Ohio, 399, 140 N. E. 586; 16 C. J., p. 683, sec. 1392; *State v. Tuttle*, 67 Ohio, 440, 93 Am. St. 689, 66 N. E. 524.)

It is unnecessary that a prosecutrix in a statutory rape case be corroborated unless her testimony is so inherently improbable or nullified by self-contradictions as to be unworthy of belief. (*State v. Anderson*, 6 Ida. 706, 59 Pac. 180; *State v. Trego*, 25 Ida. 625, 138 Pac. 1124.)

WM. E. LEE, J.—Patrick Albert Short was convicted of the crime of rape and was sentenced to imprisonment in the state penitentiary for a period of not less than five or more than six years. On the evening of the 25th day of December, 1921, Short, sixteen years of age, in company with two other boys and three girls, went riding in an automobile. Short

is the son of a farmer, residing some three miles from the
city of Payette, and he and the two other boys and the three
girls, who were the daughters of farmers residing near
Payette, were students in the high school. The testimony of
the prosecutrix is to the effect that Short and the other
boys called at her house about 8 o'clock in the evening;
that she and one of the other girls got into the automobile,
and the five went to the house of a neighbor for the third
girl, and waited there while she got ready for the ride;
that they then drove to Payette where they stopped and had
the radiator of the car filled with water; that they then
proceeded a few miles from Payette to Washoe Hill; that
Short stopped the car and said that they were out of gas;
that "After we stopped, we started talking about school
awhile and then ceased; and he started to put his hands on
me where he had no business and I took them away and
told him to stop. We had the lights on and it was snowing
and we were watching the snow fall between the rays of
light; and after awhile . . . . Margaret —— got out and
Freddie —— got up in the front seat with us, and Cecil ——
and Grace —— occupied the back of the car for a certain
number of minutes; and then Pat threatened to turn the
light on them and Cecil told him not to. And then Cecil
asked Pete (Pat) if it was not our turn next for that seat
and I said, 'No,' and Pat wanted to know why and I told
him because I was not going to. He still wanted to know
why and I told him it was not decent, and he kept insisting
then and I told him I was somewhat unwell; and then Fred-
die got out and Grace and Cecil came up in front with us
and we all four sat in the front seat for a few minutes, and
finally Pat got out of the front seat and he went to the
rear of the car and he invited me back there and I would
not go, and Cecil kept insisting on my going back and I would
not go, and they stayed back there and kept wanting me to
go back for quite awhile and Margaret —— was standing out
in the storm and we wanted her to come in and she would
not do it. She did not want to go back in the back car as
Freddie was back there, and Pat told me to come back

39 Idaho.—29

anyway then, and I told Margaret if she would get in the front I would get in the back, and when I got in the back seat Freddie —— left and went up in front. We were in the rear of the car for a few minutes and Cecil got kind of coaxing me on and insisted I should have sexual intercourse with him and he told Pat to shove me over, and Pat did shove me over and then he turned around and told Pat to go to it and he had sexual intercourse with me in the back seat and it was fully accomplished; . . . . ''

The prosecutrix further testified that after Short had accomplished his purpose she and Short sat together in the front seat and Short drove back to Payette to Margaret's home where she was left, then to the home of the prosecutrix where water was put in the radiator of the car, and the prosecutrix and Grace brought out some cake for the boys. Prosecutrix also testified that some months before at a chicken-pie social at the high school, Short suggested to her, in the presence of two other boys and two other girls, that she have sexual intercourse with him. A letter was admitted in evidence written by Short to the prosecutrix, prior to the alleged crime, in which he remonstrated with her for some of the things which she had been saying to some of their friends and which closes as follows: ''Then you told Fat I was slow, well I'm tellin' you if I get you out again you'll think I'm a whirlwind, I ain't kiddin' you.'' Prosecutrix told her mother what had happened to her some three months afterward.

Short testified in his own behalf, and his testimony agreed in all substantial respects with that of the prosecutrix except as to the reason for stopping the car on the Washoe Hill, as to the length of time they stopped on the hill, and as to his actions with respect to the prosecutrix. He denied that he attempted to or had sexual intercourse with the prosecutrix. He also denied that he had asked prosecutrix to have sexual intercourse with him upon the occasion of the chicken-pie social. The prosecutrix estimated that they stopped on the hill about an hour, while Short gave it as his best judgment that they were there a much shorter time.

The reason assigned by Short for stopping on the hill was that the engine had become hot and that upon stopping the car he immediately got out and took off the radiator cap. In this he is corroborated by the girl, Margaret, whose testimony in this respect contradicted that given by the prosecutrix.

The only assignment of error necessary to be considered is that the evidence is insufficient to sustain the verdict and the judgment entered thereon. Appellant insists that where the prosecutrix is not corroborated, in such a case as this, and the accused denies the charge and is corroborated in his denial, the testimony of the prosecutrix is not sufficient to warrant a conviction; and that where the truth of the account, given by the prosecutrix, as to what occurred at the time and place she asserts the crime was committed, is improbable, her uncorroborated testimony is not sufficient to support a judgment of conviction.

In *State v. Anderson,* 6 Ida. 706, 59 Pac. 180, this court said that a person may be convicted of rape upon the testimony of the prosecutrix even though there is no direct evidence corroborating her testimony, only when her reputation for chastity and truth are unimpeached and the circumstances surrounding the commission of the offense are clearly corroborative of her statements. There is no question here as to the chastity of the prosecutrix, she was only fifteen years of age; and no attempt was made to impeach her reputation for truth. It is necessary, therefore, to determine if there is any direct evidence corroborating the testimony of prosecutrix; and, if not, do the circumstances surrounding the commission of the alleged crime clearly corroborate the statements of the prosecutrix?

There is a point with respect to which it may be thought that there was direct evidence corroborating the testimony of the prosecutrix, that "Cecil told Pat to go to it . . . . " Margaret testified:

"Q. Do you call to mind the car having been stopped or stopped a ways south of Payette.

"A. Yes.

"Q. And I will ask you whether you heard any statement during the time the car was stopped, made by Cecil ——?

"A. I do not know that I remember, it has been quite awhile, but he said something—I do not know.

"Q. Just what did he say as near as you can remember.

"A. Well, I do not know whether it was afterwards or before I heard it, but he said something about telling Pat to go on."

It will be noted that Margaret did not identify the time Cecil told "Pat to go on" as the time when Short and the prosecutrix were occupying the back seat of the car; and a careful analysis of the questions propounded to this witness and her answers thereto, which we have quoted, will show that she did not say whether Cecil made the statement before or after the car was stopped. It therefore remains for us to determine whether "the circumstances surrounding the commission of the offense are *clearly* corroborative of the statements of the prosecutrix."

It is suggested that the fact that Margaret remained on the outside of the car while it was stopped tends to corroborate the prosecutrix, but, according to the prosecutrix, Margaret was standing on the outside of the car when Cecil and Grace were occupying the back of the car, and prosecutrix says she went to the back of the car in order that Margaret might get into the front seat. At another point prosecutrix testified that Margaret remained outside of the car during all the time the car was stopped on the hill. It is not clear, therefore, that Margaret was standing outside of the car because of anything that Short and the prosecutrix were doing. Although Margaret was called to testify, she was not asked why she remained outside of the car. A number of reasons might be assigned for Margaret's action in this respect, but since she got out of the car, according to prosecutrix, long before either prosecutrix or Short went to the back seat, we cannot say that the circumstance of Margaret's remaining out of the car is clearly corroborative of the testimony of prosecutrix.

A young girl of fifteen years of age would ordinarily be expected to make a vigorous defense of her person. Prosecutrix says she went into the back seat in order to have Margaret come in out of the snow. In other words, she went back to Short, knowing his intention, just to get another girl to come in out of the snow. Prosecutrix says she permitted Short to outrage her, without any opposition, admitting that no force was used. She did not even become angry with him. She did not make any outcry other than the exclamation, "Oh, my God!" which was loud enough for Short to hear, but which was not loud enough that she knew the others heard it. She did not use any physical force to prevent the commission of the act. On cross-examination she testified:

"Q. And you stayed in the back seat with him after Freddie —— got out.

"A. I did.

"Q. Did you make any outcry of this matter when it was started and ask others to help you.

"A. I did not make any outcry, but I did not ask them to help me.

"Q. Did you say that loud.

"A. Loud enough for him to hear.

"Q. You did not know that anybody else ever heard it.

"A. No, sir.

"Q. But you made that statement loud enough so that defendant could hear it.

"A. Yes.

"Q. Did you do anything besides that to try to get the defendant to stop.

"A. I told him to stop.

"Q. Did you exercise any physical force to try to stop him.

"A. No, sir; I considered it would not do any good.

"Q. Did you ever endeavor to stop him.

"A. No, sir."

It is difficult to believe that such a crime would be indulged in by these young people in the actual presence of

four of their associates. It is difficult to believe that a girl of fifteen would willingly permit her body to be defiled without protest and without immediate anger toward her seducer. She would have been expected to fight to the limit of her strength to prevent the outrage; she would have been expected to call upon her friends to prevent the outrage upon her person. One would not expect her to get back into the front seat with the robber of her virtue and go on back to her home with him, and there supply him with cake; and ordinarily a girl so outraged would have informed her mother at once instead of waiting for three months. And while her submission to the outrage of her body constitutes no defense to the crime, if committed, we mention these things because the judgment cannot stand unless the circumstances clearly corroborate her statements. In such cases it is usual to introduce evidence as to the physical condition of the prosecutrix in corroboration of her testimony that her person was violated. There is an utter absence of any such evidence. We cannot presume that these young school boys and girls, the sons and daughters of substantial citizens, have so far lost their sense of decency and virtue as to believe that two of them would indulge their lust in the presence of their associates; and as a circumstance, it is difficult to believe that the prosecutrix willingly permitted her defilement. We are not required, however, to disbelieve the statements of the prosecutrix. Our inquiry goes no further than to determine whether she was corroborated either by direct evidence, or that the circumstances surrounding the commission of the offense are *clearly* corroborative of the statements of the prosecutrix.

It is not contended by the Attorney General, and surely cannot be by anyone, that the mere circumstance that this boy and girl were together on the ride and had, therefore, an opportunity to commit the offense constitutes the corroboration required in the Anderson case; and to so hold would authorize a conviction upon the uncorroborated testimony of the prosecutrix aided only by evidence of an opportunity to commit the crime. We do not understand

that any corroboration of the statements of the prosecutrix is suggested other than the fact that the girl Margaret remained out of the car. The Attorney General insists, however, that the story of the prosecutrix "rings true," and that the instruction that the jury are the judges of the credibility of the witnesses, the weight of the evidence, etc., "means nothing if the testimony shall be considered and weighed by this court in the hard, cold typewritten form which it is brought before it." In determining if there is substantial evidence to sustain a verdict, we are necessarily restricted to the cold type of the reporter's transcript. This court cannot say that while the evidence appears to be insufficient to sustain the verdict, in that there is no corroboration, we will not disturb the judgment, because we did not hear the witnesses testify and did not observe their demeanor on the stand. Resolving all discrepancies in the evidence in favor of the state, because the jury heard the witnesses and observed their demeanor, still we must apply to the evidence in this case the rule announced in the Anderson case. The law is jealous of the rights and liberties of persons, and it has said that one may be convicted of the crime of rape upon the uncorroborated testimony of the prosecutrix only when "the character of the prosecutrix for chastity, as well as for truth, is unimpeached, and *where the circumstances surrounding the commission of the offense are clearly corroborative of the statements of the prosecutrix.*" (*State v. Anderson, supra.*) There is no direct evidence corroborating the testimony of prosecutrix and we have failed to find that the circumstances clearly corroborate her statements. Under the rule followed in the Anderson case, therefore, the verdict cannot stand, and the judgment must be reversed.

Appellant asks that the judgment be reversed, and that this court direct the trial court to dismiss the case. This, we are not convinced that we should do. It appears that the state did not produce all the evidence available. The boy, Cecil, who was present when the crime is alleged to have been committed, was put on the stand and asked the county

and state in which the party traveled on the evening the crime is alleged to have been committed. He was not asked by either side what he said to appellant or to the prosecutrix. Neither was he asked the important question in the case, to wit, whether Short and the prosecutrix had sexual intercourse on the back seat of the car that evening. The venue had been established both by the prosecutrix and Margaret, and not disputed. The girl Margaret was not asked the real important question, which she, without doubt, could have answered. The other boy and girl, Freddie and Grace, who were present when the prosecutrix says she was raped, were not called as witnesses, and the record does not disclose any reason therefor. The embarrassment of witnesses should not be too carefully considered when the guilt or innocence of an accused is to be determined. We cannot account for the failure of both the state and the defense to bring out all the facts. Possibly reasons not known to us justify them. We will not, therefore, direct a dismissal but will reverse the judgment and thus permit a retrial of the cause if this course is thought advisable by those whose duty it is to determine the matter.

Judgment reversed.

McCarthy, C. J., and Ensign, District Judge, concur.

William A. Lee, J., concurs in the result.

Budge, J., dissents.