232 P.2d 669

**STATE v. LINEBARGER.**

No. 7613.

Supreme Court of Idaho.

April 23, 1951.

Rehearing Denied June 25, 1951.

Cleve Groome, Frank E. Meek, Caldwell, for appellant.

Robert E. Smylie, Atty. Gen., John R. Smead, Asst. Atty. Gen., W. W. Wander, Pros. Atty., Caldwell, for respondent.

TAYLOR, Justice.

The defendant was convicted of the crime of rape charged to have been committed against the person of a female who at the time was past the age of eighteen years. The information charges that the act was accomplished "forcibly and by threats of great and immediate bodily harm accompanied by the apparent power of execution and against the consent of" the prosecutrix, and that she "did then and there resist the accomplishment of said act of sexual intercourse but her resistance was then and there overcome by force and violence used upon and against" the prosecutrix.

The statute defining rape so far as pertinent here is as follows:

"Rape is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under either of the following circumstances:

"* * *

"* * *

"3. Where she resists, but her resistance is overcome by force or violence.

"4. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution; * * *." Sec. 18–6101, I.C.

■ The defendant demurred to the information, and moved the court to require the state to elect, upon the ground that the information charged two offenses, one under subsection 3, and the other under subsection 4, supra. The appellant assigns as error the overruling of the demurrer and the denial of the motion to elect. There is no merit in these assignments. The information charges but one offense. Sec. 19–1413, I.C. State v. McDermott, 52 Idaho 602, 17 P.2d 343; State v. Carlson, 53 Idaho 139, 22 P.2d 143; State v. Salhus, 68 Idaho 75, 189 P.2d 372; State v. Baldwin, 69 Idaho 459, 208 P.2d 161; State v. Ayres, 70 Idaho 18, 211 P.2d 142.

■■ Appellant complains of the overruling of his objection to redirect examination of the prosecutrix on the ground that the subject matter of such examination was not mentioned in the cross-examination. This redirect examination elicited testimony of the prosecutrix that, after the group had returned to Caldwell, she told her girl companion what had happened, and that upon arrival at her home in Nampa she went in and woke her mother and told her what had happened, and as to her own physical condition and the condition of her clothes, and that the next morning the clothes were delivered to the sheriff. These facts were not gone into in her cross-examination. On cross-examination she was asked, "Did you say anything to these other boys and girls when you got back to the car?" She answered, "No, I didn't say anything to them then, I was afraid to." Some of the redirect examination was directed to the question of when and to whom she made complaint, which was thus referred to on the cross-examination. The rules governing the examination of witnesses are intended to protect the rights of litigants, and to secure orderly dispatch of the business of the courts, and should be observed. However, in their enforcement the court must not lose sight of the paramount objective of all trials, that is, to arrive at the truth and do justice. To this end the court must exercise a broad discretion in the application of such rules. We find no abuse of that discretion here. Secs. 9–1202, 9–1208, I.C. State v. Fox, 52 Idaho 474, 16 P.2d 663; 58 Am.Jur., Witnesses, Sec. 562; 70 C.J., Witnesses, sec. 862, p. 712.

■ Error is assigned in the admission in evidence of state's exhibits "A" and "B",

photographs of the prosecutrix, taken the day following the attack, introduced to show swollen and discolored eye, in corroboration of her testimony that defendant struck her. Exhibit "F", being a photograph of the scene of the attack, was also objected to. These photographs were supported by testimony that they were correct representations of the objects portrayed, except that the sheriff testified that the discoloration about the prosecutrix' eye did not show up in the photograph to the extent that it appeared to one observing her at the time the photograph was taken. There was no error in the admission of these exhibits. Stokes v. Long, 52 Mont. 470, 159 P. 28; State v. Roberts, 28 Nev. 350, 82 P. 100; State v. Evans, 115 Kan. 538, 224 P. 492; State v. Jones, 48 Mont. 505, 139 P. 441; State v. Reding, 52 Idaho 260, 13 P.2d 253; 23 C.J.S., Criminal Law, § 852; Mow v. People, 31 Colo. 351, 72 P. 1069.

Exhibits "C", "D" and "E" are photographs of the appellant taken at the sheriff's office two days after the attack, and were introduced to show alleged scratches on his face, in corroboration of the prosecutrix' testimony. The record does not show that the sheriff sought the prisoner's permission to take these pictures, nor that he made any objection to being photographed. The sheriff testified that they were true likenesses of the defendant as he saw him on the day following the attack. Appellant contends that this evidence violates his constitutional immunity from self-incrimination by requiring him to give evidence against himself. This contention is without merit. Art. 1, sec. 13, Idaho Constitution. State v. Casey, 108 Or. 386, 213 P. 771, 217 P. 632; State v. Oschoa, 49 Nev. 194, 242 P. 582; Shaffer v. U. S., 24 App.D.C. 417; State v. McDermott, 52 Idaho 602, 17 P.2d 343; Rutherford v. State, 135 Tex.Cr.R. 530, 121 S.W.2d 342; People v. Ferns, 27 Cal.App. 285, 149 P. 802; State v. Clark, 156 Wash. 543, 287 P. 18; State v. Sedam, 62 Idaho 26, 107 P.2d 1065.

While the sheriff was testifying as a witness for the state, he was asked if he had had occasion to talk to the defendant. Then, in response to a question, injected by the defendant in support of an objection, as to whether the defendant at the time knew the witness was the sheriff, he answered, "Yes, of course, he knew I was sheriff because of a previous investigation." On continuation of the direct examination, the prosecutor inquired, "What kind of an investigation was that?" to which the sheriff answered, "Statutory rape." The defense moved to strike the answer on the ground that attempt was being made to prove a "former alleged crime." The motion was denied. On cross-examination of the defendant, the prosecuting attorney was allowed to inquire as to his previous marriage and divorce. Then the prosecutor asked if the sheriff had inquired about his relations with the girl whom he had married. Upon objection being made by the de-

fense, the prosecuting attorney having advised the court (in the absence of the jury) that he sought to inquire into an alleged previous offense, the court sustained the objection. While there is here an inference that the defendant had been investigated in connection with a previous offense, we find no such prejudicial error as would warrant a reversal.

During the course of the examination of witnesses, the trial judge made certain comments which are assigned as error. The first occurred during the direct examination of the prosecutrix. The defendant moved to strike an answer on the ground that it was not responsive. The court ruled, "It may be stricken, if you want to be technical." The motion to strike was in a sense technical. The first part of the answer was direct and responsive and should not have been stricken. Defendant's counsel was in error in not limiting his motion to that part of the answer which was not responsive. And, since the portion of the answer which was not responsive was merely preliminary, the motion should have been denied. The next remark was made near the close of the cross-examination of the prosecutrix. The state's attorney made an objection on the ground of repetition. The court ruled, "She may answer. The court is giving you a lot of leeway on this cross-examination." The state had made only one previous objection during the course of cross-examination, and there had been some repetition. Great latitude should be allowed in the cross-examination of witnesses and we do not think the cross-examination of the prosecutrix in this case was overextended. The third remark was made during the cross-examination of the state's witness, Dr. Distler. Upon objection by the state on the ground of repetition, the court ruled, "Objection sustained. You are arguing with the witness." The question referred to was a summation of the three previous questions which had already been answered. Hence, there was some justification for the remark. No objection was made at the trial as to either of these remarks. State v. Frank, 51 Idaho 21, 1 P.2d 181; State v. Smailes, 51 Idaho 321, 5 P.2d 540; State v. Behler, 65 Idaho 464, 146 P.2d 338. However, appellant urges the impracticability of the rule requiring that objection be made to such remarks at the trial, involving as it does the risk of further prejudicing the client's cause by incurring or increasing the ire of the judge by making such objections. Counsel further urges that it is difficult to make a showing, before the appellate court, which will reflect the exact manner, facial expression, and intonation, of the trial judge at the time of making such remarks, which characterizes them as expressions of the feelings or prejudices of the judge towards the complaining litigant. These contentions are fraught with considerable merit. It is because of the susceptibility of the average juror to the opinions and prejudices of the trial judge, that the rule was established that the judge

"should make no remarks or comments that would tend to prejudice either of the parties litigant on the trial." State **v.** Miller, 60 Idaho 79, 88 P.2d 526, 527. We cannot too strongly condemn, in any trial judge, conduct or remarks during the course of a trial which are unprovoked and unnecessary to the orderly conduct of the trial, and which indicate to the jury the personal prejudices and opinions of the judge. However, in this case, while the remarks appear to be unnecessary to the orderly conduct of the trial, they were to a limited extent justified by the immediate circumstances. No attempt is made to show that the manner of the judge in making the remarks was prejudicial. And since the remarks themselves are not necessarily prejudicial, we cannot assume that actual prejudice resulted.

Appellant assigns the refusal of the court to give his requested instructions Nos. 8 and 10. No. 8 is a statement of what would constitute resistance and what would constitute consent on the part of the female in such a case. Instruction No. 6, given by the court, covered the essential elements of the crime as charged in the information and No. 7 fully covered the definition of resistance and consent. Hence, there was no error in refusing to give the requested instruction No. 8. Appellant's requested No. 10 would have advised the jury to acquit the defendant. There was no error in its refusal.

Appellant urges that the prosecutrix was an accomplice and that, therefore, her testimony must be corroborated by other evidence tending to connect the defendant with the commission of the offense. Sec. 19–2117, I.C. In support of this proposition we are cited to State v. Sims, 35 Idaho 505, 206 P. 1045; and State v. Shelton, 46 Idaho 423, 267 P. 950. These are adultery cases and have no application here. In a case of rape by force, if we should consider that consent would make the prosecutrix an accomplice, it is clear that such consent would also negative the charge of rape. Therefore, if the evidence is sufficient to sustain the conviction it necessarily means that the prosecutrix did not consent, was not an accomplice, and the statute would have no application. In State v. Elsen, 68 Idaho 50, 187 P.2d 976, 978, Mr. Justice Hyatt traced the history of the rule as to corroboration required in a rape case, and made a concise statement of the rule as it has developed in this state, to-wit: "If the character or reputation of the prosecutrix for truth and chastity is unimpeached, and her testimony is not contradictory nor inconsistent with the admitted facts of the case, and is not inherently improbable nor incredible, there can be either direct evidence corroborating her testimony, or evidence of surrounding circumstances clearly corroborating her statements. Either will suffice. If, however, her character or reputation for truth and chastity, or either, is impeached, or her testimony is contradictory or is inconsistent with the admitted facts of the case, or is inherently improbable or incredible, then

there must be direct evidence corroborating her testimony."

In this case the appellant on the witness stand freely admitted that he accomplished an act of sexual intercourse with the prosecutrix. His defense is that she consented and joined in the act. He testified that the prosecutrix told him she had had intercourse before, and one of the defense witnesses, a high school girl who said she was a friend of the defendant's and had gone out with him, testified that the prosecutrix' general reputation was not good. Whether the general reputation referred to was for chastity or truth does not appear from the record. The prosecutrix denied the statement attributed to her by the defendant. This is all of the evidence tending to impeach her. On the other hand the blood-stained panties and slip which she wore at the time were received in evidence. The doctor who made a vaginal examination of her the next day after the attack testified that he found fresh blood in the vagina, that the hymen had been perforated, and that in his opinion it had been ruptured within a period of twenty-four hours prior to his examination. He further testified that she was not menstruating at the time. The F.B.I. chemist who examined the articles of clothing testified that the blood-stains were of human blood. Such evidence is quite a conclusive refutation of the imputation of unchastity. It is urged that her conduct in walking back to the car from the canal bank, where the attack occurred, with the defendant, entering and riding with him back to Caldwell, without making complaint to the other couple who were in the back seat of the car, or otherwise indicating to them that she was angry or agitated, is inconsistent with her testimony that she resisted the defendant's embrace and submitted thereto only because of his use of force and threats of further bodily injury. As heretofore stated, she did make complaint to the other girl in the party as soon as the two boys left the car after arriving in Caldwell, and that she and the other girl immediately hailed a taxicab and returned by that means to their homes in Nampa, where she, upon her arrival, awakened and told her mother of the attack. As to her conduct in leaving the car and going through the field with the defendant to the canal bank, her testimony is that the entire group was looking for a place known as the "Low Line" where she understood there was dancing, and that he had told her it was "over there" through the field. This is to an extent corroborated by the other members of the party, who testified that they had stopped another car to enquire where the "Low Line" might be found. Even if such evidence were taken to indicate that she was willing to engage in "necking" or "petting", that would not justify a sexual assault upon her, nor render her statement that she resisted and did not consent, so improbable as to require direct corroboration. The doctor testified to bruises over her left eye and over her left ear, bruises and minor lacerations of her right ear and scalp and bruises on her

arms and right thigh. This was corroborated in various particulars by her stepfather, the other girl, the sheriff, and by her mother. The latter also testified that when she came home she was crying, nervous and upset and had mud on her face and that her blouse and skirt were dirty and grass-stained. We think the evidence fully sustains the verdict. State v. Neil, 13 Idaho 539, 90 P. 860, 91 P. 318; State v. Black, 36 Idaho 27, 208 P. 851; State v. Leavitt, 44 Idaho 739, 260 P. 164; State v. Smith, 46 Idaho 8, 265 P. 666; State v. Alvord, 47 Idaho 162, 272 P. 1010; State v. Vail, 47 Idaho 354, 275 P. 578; State v. Thomas, 47 Idaho 760, 278 P. 773; State v. Haskins, 49 Idaho 384, 289 P. 609; State v. Flitton, 52 Idaho 374, 15 P.2d 397; State v. Gailey, 69 Idaho 146, 204 P.2d 254; Sutton v. People, 145 Ill. 279, 34 N.E. 420.

Appellant also assigns as error the denial of his motion for a new trial. In addition to grounds already covered by this opinion, the motion was based upon newly discovered evidence, and is supported by an affidavit in which the deponent says she had been told that the prosecutrix had engaged in an act of sexual intercourse on a previous occasion. This, of course, is clearly hearsay and could not support the motion.

The judgment pronounced by the court was for imprisonment in the state penitentiary for the term of not more than twenty years. It is urged this is excessive. The statute provides "Rape is punishable by imprisonment in the state prison not less than one year, and the imprisonment may be extended to life in the discretion of the District Judge, * * *." § 18–6104, I.C. It is apparent from what we have said that the facts of this case are not attended by such circumstances of aggravation as have attended other cases. We are constrained to hold that the trial judge abused his discretion and the judgment should be reduced, and it is accordingly reduced to not more than five years. State v. Neil, 13 Idaho 539, 90 P. 860, 91 P. 318; State v. Powell, 71 Idaho 131, 227 P.2d 582.

The judgment of conviction so modified is affirmed.

GIVENS, C. J., and PORTER, J., concur.

KEETON, Justice, dissenting.

Being of the opinion that the defendant in this case did not have a fair and impartial trial, and that his conviction was, or may have been, the result of errors committed by the trial court adversely affecting his rights, and the errors assigned and adversely complained of being of a substantial nature, I shall present some of the reasons why I feel the judgment should be reversed.

Conceding the testimony to be in conflict and that reasonable minds might differ as to the ultimate conclusion to be reached, the defendant, whether guilty or innocent, was entitled to a fair trial before an impartial

jury, and to have his cause judicially determined.

The law is jealous of the rights and liberties of persons and the rules that apply in the conduct of a criminal trial should be enforced as to all citizens of the state, including appellant. If the appellant was convicted, or could have been convicted of a crime because of errors in the proceedings taken against him, it is then apparent that every other citizen of the state could be placed in exactly the same position; and the rules of law and procedure which apply to appellant likewise apply to every other person.

When the law has been broken, justice demands prompt punishment of the guilty. The law, however, guarantees to the accused a fair trial, and the public interest is as much involved in the sanctity of this guarantee as in the swift retribution which should follow crime.

A fair trial means a trial before an impartial judge, an honest jury, and in an atmosphere of judicial calm. It requires a wise, fearless and impartial mind to harmonize these elements of the public interest lest in its haste to deal a blow the law may perpetrate a judicial wrong. State v. Leland, Or., 227 P.2d 785, 14 Am.Jur. 853, Sec. 130; State v. Gossett, 117 S.C. 76, 108 S.E. 290, 16 A.L.R. 1302.

A wrong done to the appellant is a wrong done to every other citizen of the state.

Before discussing the errors assigned and for an understanding of the issues, it will be necessary to first review and comment on the evidence presented by the State, particularly the testimony of the prosecutrix. I shall thereafter discuss some of the errors assigned which in my opinion warrant a reversal of the judgment.

At the time of the alleged rape complained of, appellant was a boy *twenty years* of age, the prosecutrix *eighteen years*. Neither was of mature judgment or discretion. On the night in question prosecutrix and appellant met for the first time, and they, with two others, went for an automobile ride, presumably in search of the "Low Line" dance (as far as the testimony shows, nonexistent). They drove around for some time on country roads off the main traveled highway and the automobile in which they were riding eventually stopped at the end of a lane, crossed by a barbed wire fence. Before leaving the car, as hereinafter related, the prosecutrix and appellant hugged and kissed. The prosecutrix and appellant then left the car to locate the "Low Line" dance or some other parties there. After the fence was crossed, the prosecutrix and appellant walked along the banks of an irrigation ditch, and it was then discovered by the prosecutrix that the dance could not be seen from the location of the parties. The prosecutrix then testified that she learned for the first time the purpose of the sojourn, and she was "beginning to find out". Following this the alleged assault occurred (approximately 300 feet from the car where the other parties were) and the prosecutrix testi-

265

fied that the appellant threatened to choke her, striking her a number of times quite hard in the face. She tried to get away and the appellant threatened to perform the act whether she were conscious or unconscious. She returned the blows and scratched him, and they struggled and fought for quite a while. She fought so long she was worn out, and while she was lying on the slope of the canal bank where appellant had placed her, he pulled her legs down and performed the act complained of, and he did not have any decency about it. She further testified she had taken a beating, was worn out, and did not know what to do; that appellant threatened to throw her in the lake (what lake does not appear); that she was thoroughly exhausted and during the act her hands were held above her head; that she was with him quite awhile, and that she did everything she could to protect herself, and did not consent to the act.

Leaving the parties still at the place of the alleged assault, the State excused the witness from further examination.

On cross-examination, the prosecutrix testified that while she and appellant were in the car he had his arm around her shoulders, that they left the car and went over a fence, found a canal, walked along the ditch bank. Appellant kissed her, sat her down on a grass spot and caressed her body with his hands, and they hugged and kissed, and that after the act was completed the prosecutrix arose and invested and robed herself with panties of which she had formerly been divested. (Appellant testified that she removed her panties prior to the act.)

Appellant found and replaced one of the prosecutrix' lost shoes, and they then retraced their steps, and hand in hand, walked back to the car; the appellant admonished the prosecutrix not to tell. After arriving at the car, she got in the same seat of the car with the appellant, and the parties thereafter made the return trip to Caldwell, she and appellant sitting in the front seat, close together, in about the same position and atmosphere as the trip in search of the "Low Line" dance.

Prosecutrix' actions and conduct following the act of copulation of which she now complains must be considered in testing its truthfulness and it might be here noted that prosecutrix, immediately following the act complained of, and the struggle in which she took part, showed exceptional recuperating powers. She testified she had just completed a desperate fight for her honor and life which wore her out; that immediately following the act complained of she arose from the place where she had been forcibly raped, and permitted the defiler of her honor to locate and replace a lost shoe, and without agitation, calmly, hand in hand, walked back to the car with him. On arriving at the car where the other parties were, she made no outcry, uttered no complaint, gave no sign of being in any pain, was apparently perfectly

calm, asked for no protection, and shed no tears. Having so recently, as she claimed, been brutally attacked, raped and deflowered, in fear of death and great bodily harm, threatened with strangulation and death by drowning, her austere composure, forbearance and fortitude should be considered in the evaluation of her testimony.

I pass over the alleged escape at Caldwell. The alleged corroborative testimony given by witnesses of facts occurring subsequent to that time is inconsequential unless the criminal acts complained of actually occurred.

The prosecutrix' testimony of the main fact complained of must be viewed in the light of her subsequent acts and conduct, and when so compared her testimony of her forced copulative act is confusing, inconsistent and highly improbable, and should be received with caution and scrutinized with care. See State v. Short, 39 Idaho 446, 228 P. 274.

The testimony of Miss Holmes, prosecutrix' companion on the trip, is decidedly favorable to the defense although she was called as the State's witness. At F. 118 she testified that when the prosecutrix, after the return to Caldwell, told her about the alleged rape, *she made her promise not to tell* and said "something about her fingernails being broken off" (how does not appear), and it was after this confession that the prosecutrix and Miss Holmes decided to go home in a taxi. Up to that time they had been waiting for the appellant, who had just violated prosecutrix, to take them home.

As to the prosecutrix' nervousness at this time, Miss Holmes testified that she (prosecutrix) seemed a little upset. The witness noticed no bruises on the prosecutrix' face, arms or body, and the next morning when she saw prosecutrix, did not see or notice any bruises either on her face or elsewhere. The prosecutrix related none of the details of the alleged attack, and the girl's mother seemed to assume from what had been said that the girl had been raped, but was told none of the details.

A point is made of the alleged statement of the defendant in talking with the girl's mother, or others, in which he reportedly said "he did it". To what he referred or what he did, the transcript is silent. It was not a confession or plea of guilty.

The defendant denied the charge of forced rape and corroborated his statement to some extent by the testimony of the State's witness, Miss Holmes, and by the only other party who went on the trip, Wilton Wilson. Wilson described the hugging and kissing, or as he put it, the necking of the prosecutrix and Linebarger while in the car.

Again conceding that the evaluation of the testimony and the ultimate conclusion to be reached was a question for the jury to decide, I conclude that the verdict of the jury may or might have been affected by

the attitude of the trial judge, comments which he made and the many errors shown by the transcript in the admission of evidence, and the failure to sustain objections properly made to testimony offered by the State.

Certainly it cannot be contended that the proof of appellant's guilt was overwhelming, or that the proof of his guilt was evident, or the presumption great so that errors made would have no effect on the verdict.

At F. 99 and continuing through F. 108 of the transcript, the defendant's counsel time and time again objected to the testimony of the prosecuting witness on the ground it was not redirect examination. The State did not ask to recall the witness and the counsel for defense was correct in his contention that the testimony was not redirect examination. The objections made throughout the redirect examination of the prosecutrix and the motion to strike it were timely and should have been sustained. That the testimony complained of should not be admitted on redirect examination and without recalling the witness for direct examination, the following cases are in point: In State v. Johnston, 61 Idaho 87, 98 P.2d 628, 632, this Court stated: "A witness may be interrogated upon redirect examination as to any inferences shown by cross-examination, giving explanations, reasons, and motives surrounding or connected with the doing or omitting to do a particular thing, * * *." See,

also, People v. Higbee, 78 Cal.App. 455, 248 P. 927.

The direct examination should be completed before the cross-examination begins. Sec. 9–1202, I.C. See, also, State v. Miller, 60 Idaho 79, 88 P.2d 526.

A witness may be recalled for further examination in chief, in the discretion of the court. Sec. 9–1208, I.C. This was not done here.

The rule is stated in 58 Am.Jur. 314, Sec. 562: "* * * But it is generally ruled that on re-examination of a witness, he may not be questioned in reference to matters not inquired into on his cross-examination."

If the scope of the redirect examination may be left to the discretion of the trial court, in the case before us it was an abuse of discretion. The objection should have been sustained and the motion to strike granted. The case of State v. Fox, 52 Idaho 474, 16 P.2d 663, cited in the majority opinion, is not in conflict with this view.

At F. 17, defendant's counsel moved to strike an answer in the testimony. The court made the following remark: "It may be stricken, if you want to be technical." It might be inquired here just why the counsel representing the defendant should not be technical. It was their duty to see that appellant's every right was protected. The motion of counsel was not technical, but was well taken, and the remark showed

an absence of judicial calm in the very beginning of the trial.

Another error of the court appears at F. 96. The court, in overruling an objection of the State, said to appellant's counsel: "The Court is giving you a lot of lee-way on this cross-examination". Such remark was highly prejudical. The same absence of judicial calm on the part of the court is shown at F. 277, in which, in sustaining an objection, the court advised appellant's counsel: "You are arguing with the witness".

In the case of State v. Ward, 51 Idaho 68, 1 P.2d 620, 623, the defendant had been convicted of first degree murder. The court made an inappropriate comment relative to the weight of the testimony of character witnesses. In that case the killing was admitted and the proof was evident and the presumption great. Nevertheless, the court reversed the conviction and ordered a new trial. Quoting at page 77, from State v. Tilden, 27 Idaho 262, 272, 147 P. 1056, this Court said: " 'If the purity of the verdict might have been affected, it must be set aside; if it could not have been affected, it will be sustained.' " Further: *"It is conceded that juries are much more apt to be influenced by what the judge says than by what a prosecutor says."* (Emphasis supplied.) And further: *"It is well known that jurors observe the suggestions and bearing of the judge during the trial, and if they can catch an expression or suggestion of the opinion of the court as to his view of the merits of the case, they are almost sure to reflect that opinion in their verdict."* (Emphasis supplied.)

The verdict in the case before us evidently reflects the attitude of the trial judge.

I pass over many other actions of the trial judge shown in the transcript adverse to the appellant, all of which must have had an effect adverse to him, and which taken as a whole constitute reversible error.

I shall discuss briefly the assignment relative to the introduction of testimony connecting the appellant with prior criminal acts. The defendant was on the stand for cross-examination, and was compelled to testify on matters not proper on cross-examination, or at all, relative to his relationship with a girl named Mona Ray Boudreau, and I quote the following:

"Q. * * * are you married. A. Yes.

"Q. What is your wife's name. A. Mona Ray Boudreau.

"Q. How old was she.

"Mr. Groome: Just a minute. We object to this line of cross examination as entirely immaterial and not proper cross examination.

"The Court: Objection overruled.

"A. I believe she was sixteen.

"Q. (By Mr. Wander) How old were you at the time you married her. A. Twenty.

"Q. How old was she at the time you married her. A. I believe she was sixteen.

"Q. Are you sure about that. A. No, I am not sure.

"Q. Where were you married. A. At Winnemuca, Nevada.

"Q. When. A. The 19th day of—I don't recall the correct month or date, but we were married in Nevada.

"Q. How long did you know her prior to her marriage.

"Mr. Groome: We object to this as entirely immaterial, it does not tend to prove or disprove any issue in this case and it is highly prejudicial to this defendant.

"The Court: Objection overruled. He has a right to cross examine him.

"Mr. Groome: Further, it is not proper cross-examination; was not gone into originally.

"The Court: The Court has ruled.

"A. I believe it was close to a month.

"Q. (By Mr. Wander) Was she going to school when you married her. A. No., not when I married her.

"Q. Had she been going to school. A. Yes.

"Q. What grade was she in.

"Mr. Groome: We object to that; we renew our objection to this line of cross examination as improper.

"The Court: Objection overruled.

"A. I don't know what grade she was in.

"Q. (By Mr. Wander) Do you know where she is at the present time. A. No.

"Q. Are you now married to her. A. No.

"Q. Are you divorced. A. Divorced, yes.

"Q. I think a moment ago, on direct examination, in answer to a question propounded to your counsel, you had known Sheriff Luekenga previously. A. I had seen him around.

"Q. What had your acquaintance been with Mr. Luekenga prior to this time.

"Mr. Groome: That is objected to as improper cross examination; no proper foundation for it; it does not tend to prove any issue in this case.

"The Court: Objection overruled.

"Mr. Wander: Read the question."

(Question read)

"A. Mr. Luekenga come out to the house and asked me some questions. I don't remember when.

"Q. In regard to what. A. In regard to a girl in Nampa.

"Q. Who was it.

"Mr. Groome: Just a minute. We renew our objection; entirely immaterial. I want an exception to all these questions; to all of this. If he is trying to prove some other crime it is incompetent.

"The Court: Objection overruled. Your objection may go to all these questions.

"Q. (By Mr. Wander) I want an answer to my last question.

"A. What was the question.

"Mr. Wander: Read the question."

(Question read)

"A. Mona Ray Boudreau.

"Q. Do you know why Mr. Luekenga talked to you about it. A. Yes. They wanted me to come in and talk with him and he wanted to know if I had been going with this girl and I told him, yes, that I had went with her.

"Q. Did he ask you anything about your relationship with her.

"Mr. Groome: We renew our objection to that. I don't know what you have in mind. If he is trying to prove another offense it certainly is incompetent.

"The Court: The Court will hear you on this."

This testimony should be construed with the testimony of the sheriff, who had testified that he had made an investigation. I quote from the transcript:

"Q. What kind of an investigation was that. A. Statutory rape." (Referring to appellant)

"Q. I will ask you if—

"Mr. Groome: Just a moment; we move to strike that as incompetent. You cannot in this proceeding prove, or attempt to prove any former alleged crime against this defendant.

"The Court: Objection overruled.

"Mr. Groome: We move to strike the answer.

"The Court: Motion overruled."

The objection should have been sustained. It was error to even ask such a question.

The purpose of the examination is very frankly stated by the prosecuting attorney at F. 369, as follows: "I want to prove a pattern and design of this defendant and to do so we can go into any offense as long as it pertains to the offense charged to show his past behavior and design and it goes to the motive in this case."

The objection to each of the questions asked was well taken and should have been sustained. Not only that, the harm was already done. The defendant inferentially had been proved guilty of another offense (statutory rape), and a reasonable deduction from the testimony is that he had been the chief center of attraction and the principal participant in a shotgun wedding, and had thereafter abandoned the lady of tender years (16) and got a divorce from her.

The testimony and rulings were so highly prejudicial at this point a motion to discharge the jury from further consideration of the cause would have been in order, the error being such it was impossible to correct by an instruction and remove the impression that it would have on the jurors' minds. The court let the evidence stand and no doubt the jury considered it proper. No instruction admonishing the jury to disregard it appears.

At this point it was useless for the appellant to attempt to make any further defense. He thereafter had no chance of being acquitted. It was now possible to convict the appellant on general principles and because of prior inferential crimes, and, in my opinion, he was for this reason so convicted.

In State v. Garney, 45 Idaho 768, 265 P. 668, 670, in reversing the judgment of conviction of rape, this Court, referring to testimony connecting the defendant with other crimes, said: "This testimony was inadmissible and prejudicial. It was in no way linked together with the offense for which appellant was on trial. There must be a causal relation or logical and natural connection between the two acts, or they must form parts of but one transaction. The general rule is that, when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon trial, must be excluded. 8 R.C.L., p. 198, § 194."

In State v. Machen, 56 Idaho 755, 58 P. 2d 1246, 1247, this Court, speaking through Justice Budge, said:

"Section 18, art. 1, of the Constitution guarantees to every person within this state that 'right and justice shall be administered without sale, denial, delay, or prejudice.' This provision of the Constitution does not mean simply the innocent but the guilty as well; that whoever he may be, justice shall be administered to him 'without prejudice.' In the case before us, appellant was accused of raping, upon a specific date, a girl under the age of eighteen years who by virtue of the statute was incapable of giving her consent to the act. Upon the trial the state was allowed to prove that appellant was guilty of other offenses of different character; not only that, but that his witnesses were guilty of offenses disassociated from the crime for which appellant was being tried. * * * The admission in evidence of testimony of the character referred to convinces us that appellant did not have a fair and impartial trial. Since the cause must be remanded for a new trial, further discussion of the evidence is unnecessary.

"The judgment is reversed and remanded with instructions to the trial court to grant a new trial."

In State v. Miller, 60 Idaho 79, 88 P.2d 526, 527, where errors were assigned of improper conduct of the trial judge and where evidence was admitted of other crimes for which the defendant was not on trial, this Court said: "It is a recognized rule of this court that the trial court should make no remarks or comments that would tend to prejudice either of the parties litigant on the trial. Prejudicial comment should be avoided. State v. Mox Mox, 28 Idaho 176, 181, 152 P. 802; State v. Neil, 58 Idaho 359, 367, 74 P.2d 586."

In the conclusions given in the syllabus of the case, to sustain a reversal of the conviction, are the following:

"Specific *facts* and *inferences* may not be shown either to corroborate or rebut evidence of general reputation.

"Evidence as to character of an accused, whether introduced in his behalf or in behalf of prosecution, must be confined to his general reputation and cannot be established by proof of specific acts *Nor as a result of conversations between police officers.*

"In prosecution for operating automobile while accused was intoxicated, admission of testimony of police officer that other officers had reported instances of accused's intoxication within the last six months was prejudicial error." (Emphasis supplied.)

In State v. Jones, 62 Idaho 552, 113 P.2d 1106, this Court said: "In prosecution for statutory rape, recross-examination of defendant regarding arrest on preceding Sunday for drunken driving was improper because relating to offense in no way linked with crime in question."

The rule has been recognized by this Court in so many criminal trials that it must now be recognized as well established. See State v. Hines, 43 Idaho 713, 254 P. 217; State v. Larsen, 42 Idaho 517, 246 P. 313.

The contention that other crimes and inferences of the commission of other crimes is inadmissible on the trial of a defendant for some particular offense, and the rule is so universally and well recognized that a lengthy review of cases and texts on the subject is unnecessary.

The rule is stated in 22 C.J.S., Criminal Law, § 682, p. 1084, as follows: "The general rule is that evidence that accused has committed another crime independent of, and unconnected with, the one on trial is inadmissible; it is not competent to prove one crime by proving another."

For corroboration of the prosecutrix' testimony, the State relied on the testimony of Miss Holmes, the prosecutrix' mother, the doctor, the sheriff, and the examination of the girl's clothing made by Edward R. Donaldson. The statement to the Holmes girl by the prosecutrix that she had been raped, and a similar statement to her mother is not of itself corroboration. Further, it is hearsay, and all of the alleged corroborative testimony might be construed as proving that an act of sexual intercourse

took place, but would not necessarily prove that a rape had been committed.

The prosecutrix' own conduct does not corroborate her evidence of a forced copulative act.

I quote from State v. Short, supra, [39 Idaho 446, 228 Pa. 275] covering the law under such circumstances: "The only assignment of error necessary to be considered is that the evidence is insufficient to sustain the verdict and the judgment entered thereon. Appellant insists that where the prosecutrix is not corroborated, in such a case as this, and the accused denies the charge and is corroborated in his denial, the testimony of the prosecutrix is not sufficient to warrant a conviction, and that where the truth of the account, given by the prosecutrix, as to what occurred at the time and place she asserts the crime was committed, is improbable, her uncorroborated testimony is not sufficient to support a judgment of conviction."

Further at page 455 of 39 Idaho, at page 277 of 228 P., the Court said: "The law is jealous of the rights and liberties of persons, and it has said that one may be convicted of the crime of rape upon the uncorroborated testimony of the prosecutrix only when 'the character of the prosecutrix for chastity, as well as for truth, is unimpeached, and *where the circumstances surrounding the commission of the offense are clearly corroborative of the statements of the prosecutrix.'* State v. Anderson, supra. There is no direct evidence corro-

borating the testimony of prosecutrix, and *we have failed to find that the circumstances clearly corroborate her statements.* Under the rule followed in the Anderson Case, therefore, the verdict cannot stand, and the judgment must be reversed."

Instruction No. 8 requested by the defendant covering the distinction between a rape and an act of sexual intercourse consented to was a proper statement of the law, and it should have been given. There are other reasons appearing in the transcript which would warrant a reversal of the judgment, but a further prolonging of this dissent could serve no useful purpose.

While *girls* of tender years must be protected, it is also true that *boys* should likewise be accorded the full force and benefit of the law in such cases made and provided, and a boy of *twenty* years of age should not be sent to the penitentiary and his life completely ruined, absent a fair trial, for an escapade pictured by the transcript.

The judgment should be reversed.

THOMAS, Justice (dissenting).

I concur in the dissent of Justice KEETON to the effect that all the evidence introduced, over repeated objection of counsel for defendant, connecting or even tending to connect defendant with the commission of other crimes not in any wise related to or logically and naturally connected with the offense charged was highly prejudicial and resulted in denying defend-

ant his constitutional right to a fair and impartial trial.

I also concur in the dissent of Justice KEETON that the remarks and comment of the trial judge, in the presence of the jury, constituted prejudicial misconduct, depriving defendant of a fair and impartial trial, but desire to amplify the reasons for my concurrence in this latter respect.

I am not unmindful of the fact that it is impossible to apply any fixed rule to determine just what conduct or what comments or remarks of a trial judge in the presence of the jury may amount to prejudicial invasion of the rights of the defendant; neither am I unmindful of the fact that each case in this respect must necessarily turn upon its own peculiar circumstances; however, the trial judge should to the limit of his capacity throughout such trial, avoid to the fullest extent, even though it taxes his patience, the utterance of any remarks or comments upon a ruling or otherwise, in the presence of the jury, which would have any tendency to affect the verdict of the jury.

The trial court and this court on appeal should exercise unlimited concern to see that justice is not miscarried; a miscarriage of justice does not simply mean that a guilty person has escaped or that an innocent person has been convicted; it means more than that; it means that neither the essential rights of the people nor of the defendant should be disregarded or denied during the course of the trial.

The effect of the accumulative remarks and comment of the trial judge, in this instance, deprived the defendant of a fair and impartial trial. Using language tending to bring the attorney for defendant into the contempt, curiosity and ridicule of the jury or using language or making intimation tending to prejudice such attorney before the jury, is grounds for reversal. Williams v. State, 34 Ala.App. 253, 39 So.2d 29.

Counsel for the defendant should not be held up to the ridicule, contempt and curiosity of the jury by remarks and comment of the court in the presence of the jury nor should the court by his remarks and comment tend to lead the jury to draw a conclusion that the court thought there was something sham about the defense of the defendant. It is also the privilege, and in fact the sworn duty, of counsel for defendant to protect defendant's rights during the course of the trial and he should be free from severe reprimands, ridicule and severe criticism, in the presence of the jury, while carrying out this solemn responsibility.

Any remarks or comments of the trial judge which have the effect to impute lack of good faith on the part of counsel for defendant in the presence of the jury unjustly injures the cause of the defendant and hence deprives him of that fair and impartial trial to which everyone is entitled.

I do not intend to leave the impression by anything I may say that the trial judge is without power to direct the course of the trial or to expedite its termination, or to reprimand counsel out of the presence of the jury where warranted: On the other hand no one could for one moment doubt that every remark made by the trial court in the presence of the jury which tends to disparage either party or counsel has effect upon the jury; the jury usually consists of men and women unskilled with reference to court procedure who are ever ready to accept any intimation from the trial judge as to what their verdict should be; the jury watches every movement of the judge, discerns the tone of his voice, observes his demeanor and detects the slightest evidence on the part of the trial judge as to his feelings or leanings in any case, and they place great reliance upon what he says, how he says it, and what he does; however impatient a trial judge may be with a defense, he should be careful not to indicate such impatience by remarks or comments during the course of the trial which will in any wise tend to prejudice the defendant. People v. Zammora, 66 Cal.App.2d 166, 152 P.2d 180 at page 203; Garrett v. State, 74 Okl.Cr. 78, 123 P.2d 283.

The judgment of conviction should be reversed.

I am authorized to say that Justice KEETON concurs in this dissent.